MATTER OF VALIYEE

In Section 246 Proceedings

A–11923802

*Decided by Special Inquiry Officer*
*Decided by Board June 3, 1974*

(1) The provisions of section 246 of the Immigration and Nationality Act are retroactive, notwithstanding the rights of a third party beneficiary not privy to the original action, are involved.

(2) As a result of section 246 proceedings, the permanent resident status of respondent's wife was rescinded *ab initio*, thereby rendering respondent ineligible for preference classification as the spouse of a permanent resident alien, and likewise ineligible for adjustment of status under section 245 of the Act on December 1, 1962, on the basis of that classification, since an immigrant visa was not available to him at that time. Accordingly, his permanent resident status is rescinded.

(3) Rescission proceedings against respondent are not premature by reason of the fact rescission proceedings against his wife, through whom he derived permanent resident status, are pending before the Board of Immigration Appeals on a motion for reconsideration, since under 8 CFR 3.8 the filing of a motion to reconsider does not stay execution of any decision made in the case, and execution of such decision shall proceed unless a stay is specifically granted.

IN BEHALF OF RESPONDENT:
Mas Yonemura, Esquire
405—14th Street, Suite 1015
Oakland, California 94612

IN BEHALF OF SERVICE:
Stephen M. Suffin
Trial Attorney

DECISION OF THE SPECIAL INQUIRY OFFICER

The Service seeks to rescind under Section 246 of the Immigration and Nationality Act the permanent resident status which was granted to the respondent under Section 245 of the Act on

December 1, 1962.[1] The respondent contests the Service's attempt to rescind his status.

The respondent is a 35-year-old male alien, a native citizen of Iran. He entered the United States at the port of New York on February 29, 1959, after having been admitted as a nonimmigrant student. On April 2, 1962, at Reno, Nevada, he married Mahviz Ettlinger nee Daneshforouz, a native citizen of Iran, who had been accorded permanent resident status under Section 245 on October 6, 1961. (Exh. 8) On June 8, 1962, on the basis of a petition filed by Mahviz Valiyee nee Daneshforouz, he was accorded third preference status under then Section 203(a)(3) of the Act as the spouse of a lawful permanent resident alien. (Exh. 4)

On September 13, 1962, the respondent applied for permanent resident status under Section 245, claiming immediate availability to him of an immigrant visa on the quota for Iran on the strength of the third preference status which had been accorded him. (Exh. 5) On December 1, 1962, his application was granted. (Exh. 7) On that date numbers under the nonpreference portion of the quota for Iran were unavailable. (Exh. 9)

On August 17, 1966, at San Francisco, I ordered rescission under Section 246 of the permanent resident status that had been granted to Mahviz Ettlinger on October 6, 1961, under Section 245. (Exh. 8) On December 1, 1966, the Board of Immigration Appeals dismissed her appeal from my decision. (Exh. 8) A motion to reconsider its decision of December 1, 1966, is pending before the Board.

The rescission ground charged is that the respondent was not in fact eligible for adjustment of his status under Section 245 "because he was not entitled to status under Section 203(a)(3) of the Immigration and Nationality Act as the spouse of a lawful permanent resident alien, and a visa under the quota for Iran was not available to" him. (Exh. 1)

The theory of the Service's case is that rescission of a permanent resident status under Section 246 has *ab initio* effect. Thus, as the respondent's wife's status has been rescinded, the respond-

---

[1] Section 246 provides in pertinent part:

"(a) ... If, at any time within five years after the status of a person has been otherwise adjusted under the provisions of section 245 or 249 of this Act or any other provision of law to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such person and canceling deportation in the case of such person if that occurred and the person shall thereupon be subject to all provisions of this Act to the same extent as if the adjustment of status had not been made."

ent was not in fact eligible on December 1, 1962, for third preference status. As the nonpreference portion of the quota for Iran was unavailable on that date he was ineligible for adjustment under Section 245, which required that an immigrant visa be immediately available to the applicant. The status accorded him on December 1, 1962, was subject to rescission, therefore, on the ground he was ineligible for it, the only ground for rescission specified in Section 246. (Exh. 1; trial attorney's brief of 11-9-67)

The respondent's first contention is that this proceeding is premature as there is pending before the Board of Immigration Appeals a motion for reconsideration of the Board's order of December 1, 1966, which dismissed Mahviz Ettlinger's appeal from the rescission order of August 17, 1966. The trial attorney replies that 8 CFR 3.8 disposes of counsel's prematurity argument.

8 CFR 3.8 provides that the filing of a motion to reconsider shall not stay the execution of any decision made in a case and that execution of such decision shall proceed unless a stay of execution is specifically granted. Thus, the motion to reconsider has not disturbed the administrative finality of the Board's order of December 1, 1966. The motion was not an essential step on the road to exhaustion of administrative remedies, a prerequisite for judicial review. Even the right to judicial review of a deportation order under Section 106 of the Act does not stay execution thereof, and although service of a petition for review thereunder stays deportation of alien pending determination of the petition by the Court, the Court may direct otherwise. Similarly neither the right to judicial review nor filing of an action under Section 10 of the Administrative Procedure Act results in automatic stay of execution of an administrative order.

Accordingly, the first contention of counsel for the respondent is rejected.

The respondent's second contention is that Section 246(a) is not retroactive, particularly where the rights of a third party beneficiary are involved. He argues that use of the term "thereupon" in Section 246, which provides that the person whose status has been rescinded "shall thereupon be subject to all provisions of this Act to the same extent as if the adjustment of status had not been made" can only mean "that immediately following the action taken in rescission the person ... [whose status has been rescinded] shall be subject to all the provisions of the Act." He compares the language of Section 246 with that of Section 340 of the Act, which provides for revocation of naturalization, and also provides, "[S]uch revocation and setting aside of the order admitting such person to citizenship and such canceling of certificate of naturalization shall be effective as of the original date of the order and

certificate, respectively." He argues that in section 340 the retroactive effect of a denaturalization order is expressly spelled out, whereas section 246 is silent, and that as Congress considered both sections at the same time the difference in wording is significant. He continues that under Supreme Court decisions doubts regarding construction of a statute should be resolved in favor of the alien.[2]

But there is no doubt here. Agreed that section 340 is clearer than section 246 on the matter of *ab initio* effect. It is permissible in a statute as lengthy, complicated, and diversified as the Immigration and Nationality Act to use more than one mode of expression to achieve the same result. "[S]hall thereupon be subject to all provisions of this Act *to the same extent as if the adjustment of status had not been made*" (emphasis added) can only mean in my judgment "that immediately following the action taken in rescission the person shall be subject to all the provisions of the Act," as contended by counsel for the respondent, with one addition he conveniently omitted—as though the adjustment of status had not been made. In other words, the person whose status has been rescinded is in the same position he would have been in had he never been adjusted.

Counsel contends further that as rescission of the respondent's status would make him automatically deportable, the clear, unequivocal, and convincing burden of proof imposed on the Government in deportation proceedings by the Supreme Court in *Woodby* v. *I. & N. Service*, 384 U.S. 904 (1966), should apply to section 246 proceedings. I fail to see how adoption of the *Woodby* standard of proof would benefit the respondent because the facts alleged as ground for rescission have certainly been established by clear, unequivocal, and convincing evidence.

*Brancato* v. *Lehman*, 239 F.2d 663 (C.A. 6, 1956), cited by counsel for the respondent, is not pertinent as it dealt with interpretation of the term "entry" and whether Brancato, who in fact had worn the mantel of citizenship when he last entered, could be treated as having been an alien at that time, as a result of the revocation of his naturalization thereafter, and found deportable on the ground he had been convicted of a crime committed within five years after his entry. The Court, which had had no difficulty in giving a retroactive effect to the denaturalization order, declined to give a relation-back construction to the deportation statute. *Brancato* v. *Lehman, supra* at 666. The Supreme Court of the United States

---

[2] The cases cited by counsel for the respondent in support of this principle are *I. & N. Service* v. *Errico*, 385 U.S. 214 (1966); *Fong Haw Tan* v. *Phelan*, 333 U.S. 6 (1948).

acted similarly in *Costello v. I. & N. Service*, 376 U.S. 120 (1964). It had been asked to find deportable a denaturalized person who had been convicted of two crimes involving moral turpitude while he was a naturalized person. It refused to do so, because to apply a relation-back construction to Section 241(a)(4) of the Act, the deportation statute under consideration, would have rendered nugatory Section 241(b)(2), which it was not prepared to do in the absence of a clear expression from Congress. In the instant case, however, we are dealing with the effect on the respondent's status of revocation of the status of his wife, from whose status, while she had it, he had derived a benefit. The Government is not trying here, as it had tried in *Brancato* and *Costello*, to strip him of his status and then subject him to disabilities arising from occurrences while he had the status, with which he was unable to cope because of its existence. True, if the respondent was a deportable alien before he acquired permanent resident status and his status is revoked, he will most likely be deportable on the same basis as before. But that is considerably different from saying that a person whose citizenship has been revoked is deportable for occurrences while he wore the mantle of citizenship. *Brancato* and *Costello* are not analogous, therefore, to the situation of the respondent who is and to date always has been an alien.

Counsel for the respondent urges that the respondent's status should not be disturbed under the "well established principle ... that regardless of the express retroactive provisions of a statute or a rule of law applicable to a party or parties who are in privity, such a law will not be mechanically applied *nunc pro tunc* to a third party beneficiary who was not in privity in the original transaction." (Counsel's brief, p. 9) He cites as illustrations of the principle *Matter of F—*, 1 I. & N. Dec. 84, BIA 5-7-41, approved by the A.G., *Matter of P—*, 5 I. & N. Dec. 218, BIA 5-7-53, and *Matter of G—*, 5 I. & N. Dec. 517, 11-13-53. *Matter of F—*, *supra*, held that an alien who had been admitted to the United States as a nonquota immigrant, the spouse of a naturalized citizen, whose naturalization was subsequently cancelled on the ground of fraud, is not deportable in the absence of evidence that the naturalization had been obtained for the purpose of procuring the wife's admission or that she was a party to the fraudulent transaction. The case was decided, however, on the basis of a departmental policy set forth in a letter quoted in the opinion.

*Matter of P—*, *supra*, and *Matter of G—*, *supra*, decided that a person who had been admitted into the United States as a citizen thereof at birth through his father under an erroneous administrative view of the effect of cancellation of his father's citizenship would be regarded as having been lawfully admitted to the United

States for permanent residence as an alien unless he had knowingly participated in the unlawful naturalization or had had knowledge thereof prior to his admission into the United States. The result in both cases was an application of an "administrative view" formulated, after a court had ruled that the child had lost his citizenship claim upon revocation of his father's naturalization, to alleviate the hardship resulting to persons who had been admitted to the United States as citizens under the erroneous administative interpretation. Again, this policy was limited to entirely innocent parties who had been placed in their predicament through no fault of their own.

I know of no policy similar to those described above in favor of one who acquired permanent resident status on the basis of marriage to an alien whose permanent resident status was subsequently rescinded. But if there were such a policy it would most certainly apply only to innocent third parties who had obtained their status before revocation of their spouse's status and who established they had been placed in their predicament through no fault of their own. It can hardly be contended with probity that the respondent was the innocent beneficiary of the status which Mahviz Ettlinger enjoyed from October 6, 1961, to December 1, 1966, and that his predicament has arisen through no fault of his own. Both the majority and dissenting opinions of the Board of Immigration Appeals in her case, which were entered in evidence as Exhibit 8 herein without objection or restriction, amply illustrate the contrary.

Counsel's contentions regarding third party beneficiaries is, therefore, rejected.

Likewise, counsel's attempt to assimilate the respondent's situation to that of a child of a void marriage who has been held on the basis of the legitimacy statute to be entitled to rights of a legitimate child under the Workmen's Compensation Law of California, or to a third party beneficiary of a voidable contract who had acted in good faith are not persuasive.

Accordingly, I conclude that there is outstanding a final order of revocation of the permanent resident status which had been granted to Mahviz Ettlinger, that revocation thereof wiped out her status *ab initio*, and that at the time the respondent was granted his permanent resident status under Section 245 on the basis of a third preference on the quota for Iran, there was not immediately available to him a quota immigrant visa. He was therefore, ineligible for Section 245 relief. His permanent resident status, which had been granted thereunder, is revoked on that ground.

It is ordered that the respondent's status under Section 245 of the

Immigration and Nationality Act, which had been granted to him on December 1, 1962, be revoked under Section 246 of the Act.

## BEFORE THE BOARD

This is an appeal from an order of an immigration judge rescinding the respondent's permanent resident status previously granted under section 245 of the Immigration and Nationality Act. The appeal will be dismissed.

The facts are not in dispute. The respondent is an alien, a native and citizen of Iran, who was admitted to the United States on February 26, 1959 as a nomimmigrant student. On April 2, 1962, he married Mahviz Ettlinger, a native and citizen of Iran who had been accorded permanent resident status under section 245 of the Immigration and Nationality Act on October 6, 1961. Thereafter, the respondent was accorded preference status under section 203(a)(3) of the Act as the spouse of a lawful permanent resident alien.

On December 1, 1962, the respondent's application for permanent resident status under section 245 of the Act was granted. On that date numbers under the nonpreference portion of the quota for Iran were unavailable. Thereafter, on August 17, 1966, the immigration judge ordered rescission pursuant to the provisions of section 246 of the Act, 8 U.S.C. 1256, of the adjustment of status granted to Mahviz Ettlinger. Having accomplished this the Service then proceeded against the respondent on the theory that as the respondent's wife's status had been rescinded, the respondent was not in fact eligible on December 1, 1962 for a third preference status. As the nonpreference portion of the quota for Iran was unavailable on that date, he was ineligible for adjustment of status under section 245, which specifically requires that an immigrant visa be immediately available to the applicant.

On appeal counsel argues: (1) that the rescission proceedings against the respondent are premature and cannot be sustained while the related rescisson proceedings of Mahviz Ettlinger are pending before this Board on a motion for reconsideration; (2) that section 246 is not retroactive particularly where the rights of a third-party beneficiary are involved; and (3) that section 246 does not apply *nunc pro tunc* to a third-party beneficiary not in privy to the original transaction.

In a well-reasoned decision, the immigration judge has succinctly set forth the facts and applied the pertinent legal principles and case law. He concluded that as a result of rescission proceedings, the permanent resident status granted to Mahviz Ettlinger had been nullified *ab initio* and rendered the respondent ineligible for relief under section 203(a)(3) of the Act as the spouse of a lawful

permanent resident alien, and a visa under the quota for Iran was not then available to him. Accordingly, his permanent resident status was revoked.

We reject counsel's argument that this rescission proceeding is premature because Mahviz Ettlinger had filed a motion to reconsider the decision ordering rescission of her permanent resident status. The answer to this contention is found in 8 CFR 3.8 which states that the filing of a motion to reconsider shall not stay the execution of any decision made in the case, and the execution of such decision shall proceed unless a stay of execution is specifically granted by the Board or the officer of the Service having administrative jurisdiction over the case.

We also reject counsel's argument that section 246 does not operate retroactively. It is clear that Congress intended to authorize the Attorney General, after voiding the alien's permanent resident status, to subject the alien to such provisions of the Act as were appropriate prior to the grant of section 245 relief. The key to this problem is found in the following language: "... and the person shall thereupon be subject to all provisions of this Act to the same extent as if the adjustment of status had not been made." Inasmuch as an immigrant visa was not readily available to him at the time he was granted his permanent resident status under section 245, he was ineligible for section 245 relief. The immigration judge properly revoked the respondent's permanent resident status. Accordingly, we affirm his decision and dismiss the appeal.

**ORDER:** The appeal is dismissed.