# In re M-S-, Respondent

*Decided October 30, 1998*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Where an alien who did not receive oral warnings of the    consequences  of  failing  to
appear at a deportation hearing pursuant to section 242B(a) of the Immigration and
Nationality Act, 8 U.S.C. § 1252b(a) (1994), moves to reopen deportation proceedings held
in absentia under section 242B(c) of the Act in order to apply for a form of relief that was
unavailable at the time of the hearing, the rescission requirements prescribed by section
242B(c)(3) of the Act are not applicable. Instead, the motion to reopen is subject to the regu-
latory requirements set forth at 8 C.F.R. §§ 3.2(c) and 3.23(b) (1998).

(2) Where deportation proceedings held in absentia are reopened to allow for an application for
new relief, the Immigration Judge must determine in each individual case the weight to be
accorded to the alien's explanation for failing to appear at the hearing and whether such expla-
nation is a favorable or adverse factor with respect to the ultimate discretionary determination.

William J. Anastasi, Esquire, Hartford, Connecticut, for respondent

Before:    Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; HOLMES, VIL-
           LAGELIU, FILPPU, ROSENBERG, and GRANT, Board Members. Concurring
           Opinion: GUENDELSBERGER, Board Member. Dissenting Opinion: HUR-
           WITZ, Board Member, joined by VACCA, HEILMAN, COLE, MATHON, and
           JONES, Board Members.

VILLAGELIU, Board Member:

The respondent appeals from the decision of an Immigration Judge dated
July 1, 1996, finding that she did not satisfy the requirements for rescinding
an in absentia deportation order prescribed by section 242B(c)(3) of the
Immigration and Nationality Act, 8 U.S.C. § 1252b(c)(3) (1994)[1], and deny-

_____

[1]The provisions of section 242B were stricken from the Act by section 308(b)(6) of the
Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L.
No. 104-208, 110 Stat. 3009-546, 3009-615 (enacted Sept. 30, 1996) ("IIRIRA"). Similar
provisions to address removal proceedings for aliens issued a Notice to Appear on or after
April 1, 1997, were added by section 304(a)(3) of the IIRIRA, 110 Stat. at 589, which creat-
ed section 240 of the Act, 8 U.S.C. § 1229a (Supp. II 1996).

ing her motion to reopen and a request for a stay of deportation. The appeal will be sustained, and the record will be remanded for further proceedings.

## I. PROCEDURAL OVERVIEW

The respondent is a native and citizen of Ghana who entered the United States on October 22, 1993, without a valid immigrant visa. She subsequently submitted an application for asylum to the Immigration and Naturalization Service. On August 16, 1995, the Service's asylum officer referred the asylum application, without approving it, to an Immigration Judge for adjudication in deportation proceedings, in accordance with 8 C.F.R. § 208.14(b)(2) (1995).

The asylum officer served the respondent with an Order to Show Cause and Notice of Hearing (Form I-221), scheduling the respondent for a January 17, 1996, deportation hearing. According to the Order to Show Cause, the warnings of the consequences of failing to appear at the deportation hearing were not read to the respondent, whose native language is Twi. *See* sections 242B(e)(1), (5) of the Act.

On January 17, 1996, the respondent did not appear at her deportation hearing. The Immigration Judge found the respondent deportable as charged by clear, unequivocal, and convincing evidence under section 241(a)(1)(A) of the Act, 8 U.S.C. § 1251(a)(1)(A) (1994), as an alien excludable at entry under section 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I) (1994), for not having a valid immigrant visa. An in absentia order was issued in accordance with section 242B(c)(1) of the Act, and the respondent was ordered deported to Ghana.

On December 15, 1995, the respondent married a United States citizen, who filed an immediate relative visa petition on her behalf on February 27, 1996. On March 4, 1996, the respondent filed a motion to reopen accompanied by an application for adjustment of status and supporting documentation.

The respondent's motion also addressed her failure to appear at her January 17, 1996, hearing. The respondent averred that she was told by the asylum officer that she would receive formal notice of her hearing in the mail. The respondent claimed that she did not receive this formal notice, never saw that the hearing date was indicated in the Order to Show Cause, and failed to appear because she was unaware of the scheduled hearing. The Immigration Judge denied the motion to reopen, finding that the respondent did not establish the exceptional circumstances for failing to appear at her hearing that were required to rescind the in absentia order, and that she was not prima facie eligible to adjust her status because she did not have an approved visa petition.

On May 24, 1996, the respondent's visa petition was approved.[2]  On May 31, 1996, the respondent filed a new motion to reopen and requested a stay of deportation and a change of venue from Boston, Massachusetts, to Hartford, Connecticut. The Immigration Judge again denied this motion to reopen, finding that the respondent had not established that she had failed to appear at her deportation hearing on January 17, 1996, due to exceptional circumstances. The respondent has appealed this decision of the Immigration Judge, arguing that she is eligible for adjustment of status.

## II. ISSUE PRESENTED

The issue before us is whether the exceptional circumstances requirements, prescribed by section 242B(c)(3) of the Act for rescission of an in absentia deportation order, are applicable to a motion to reopen seeking adjustment of status by an alien who did not receive the oral warnings of the consequences of failing to appear at a deportation hearing.

## III. APPLICABLE STATUTES

The statutes in question are sections 242B(c)(1),(3)(A), (e)(1), and (5) of the Act, which read as follows:

(c) CONSEQUENCES OF FAILURE TO APPEAR.—
   (1) IN GENERAL.—Any alien who, after written notice required under subsection (a)(2) has been provided to the alien or the alien's counsel of record, does not attend a proceeding under section 242, shall be ordered deported under section 242(b)(1) in absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is deportable. The written notice by the Attorney General shall be considered sufficient for purposes of this paragraph if provided at the most recent address provided under subsection (a)(1)(F).
   (3) RESCISSION OF ORDER.—Such an order may be rescinded only—
   (A) upon a motion to reopen filed within 180 days after the date of the order of deportation if the alien demonstrates that the failure to appear was because of exceptional circumstances (as defined in subsection (f)(2)), or
   (B) upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with subsection (a)(2) or the alien demonstrates that the alien was in Federal or State custody and did not appear through no fault of the alien.
The filing of the motion to reopen described in subparagraph (A) or (B) shall stay the deportation of the alien pending disposition of the motion.

---

[2]Pursuant to 8 C.F.R. § 245.2(a)(2)(i) (1996), the adjustment application was deemed filed on February 27, 1996, the date when the visa petition was originally filed. *See Matter of Yodying*, 17 I&N Dec. 155 (BIA 1979).

(e) LIMITATION ON DISCRETIONARY RELIEF FOR FAILURE TO APPEAR.—

(1) AT DEPORTATION PROCEEDINGS.—Any alien against whom a final order of deportation is entered in absentia under this section and who, at the time of the notice described in subsection (a)(2), was provided oral notice, either in the alien's native language or in another language the alien understands, of the time and place of the proceedings and of the consequences under this paragraph of failing, other than because of exceptional circumstances (as defined in subsection (f)(2)) to attend a proceeding under section 242, shall not be eligible for relief described in paragraph (5) for a period of 5 years after the date of the entry of the final order of deportation.

(5) RELIEF COVERED.—The relief described in this paragraph is—
(A) voluntary departure under section 242(b)(1),
(B) suspension of deportation or voluntary departure under section 244, and
(C) adjustment or change of status under section 245, 248, or 249.

## IV. STATUTORY ANALYSIS

The issue before us is one of statutory construction. The object of statutory construction is to determine the congressional intent with respect to the legislation enacted. If the statutory language is clear, that is the end of the inquiry, as Immigration Judges and the Board, as well as the courts, clearly "must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984). The paramount index of congressional intent is the plain meaning of the words used in the statute as a whole. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987); *see also Matter of Grinberg*, 20 I&N Dec. 911 (BIA 1994). And, it is assumed that the legislative purpose is expressed by the ordinary meaning of the words used. *INS v. Phinpathya*, 464 U.S. 183, 189 (1984). Moreover, in ascertaining the "plain meaning" of the statute, the Board "must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988).

As noted above, the language of section 242B(c)(3) of the Act states that an in absentia deportation order may only be rescinded, for certain reasons, by way of a motion to reopen. However, section 242B of the Act does not indicate whether an in absentia order must always be rescinded before reopening proceedings, or whether a motion to reopen may be granted without first rescinding the deportation order where an alien is eligible for previously unavailable relief and seeks only adjudication of the new application. Instead, the language of the statute merely prescribes the procedure for rescinding an in absentia deportation order. Consequently, we start our analysis by examining the meaning of the word "rescind" to determine whether such rescission is an implied condition precedent to reopening deportation proceedings for other purposes.

According to Black's Law Dictionary, "rescission" means to annul ab initio. *Black's Law Dictionary* 1306 (6th ed. 1990). The dictionary explains by example that rescission of a contract is "[t]o declare a contract void in its inception and to put an end to it as though it never were. A 'rescission' amounts to the unmaking of a contract, or an undoing of it from the beginning, and not merely a termination . . . ." *Id.* (citation omitted). Thus, by the plain meaning of the words in section 242B(c)(3) of the Act, to "rescind" an in absentia deportation order is to annul from the beginning all of the determinations reached in the in absentia hearing. The only reasons that will support such rescission are exceptional circumstances which prevented the alien from appearing, the alien's incarceration which prevented her appearance, or lack of notice of the hearing.

Once an in absentia order is rescinded, the alien is then given a new opportunity to litigate the issues previously resolved against her at the in absentia hearing.[3] In other words, the deportation proceedings go back to the start, the Service must proceed to prove deportability under the allegations in the original Order to Show Cause, and the alien must establish any eligibility for relief. *Matter of Grijalva,* 21 I&N Dec. 472 (BIA 1996). The alien is returned to the same status she had prior to the in absentia hearing, namely, an alien charged with deportability and subject to the already-initiated deportation proceedings.[4]

In contrast, proceedings may be "reopened" when a new question has arisen that requires a hearing. *Matter of Ku*, 15 I&N Dec. 712 (BIA 1976);

---

[3]At the in absentia hearing, the Service may present evidence of deportability "in like manner as if the alien were present," and all pending applications for relief from deportation are deemed abandoned. Section 242(b) of the Act, 8 U.S.C. § 1252(b) (1994); *see also Matter of Nafi*, 19 I&N Dec. 430, 431 (BIA 1987); *Matter of Jaliawala*, 14 I&N Dec. 664 (BIA 1974); *cf. Wellington v. INS*, 108 F.3d 631 (5th Cir. 1997) (noting that the alien failed to appear for his deportation hearing on an application for relief after having conceded deportability).

[4]An analogy to rescission of adjustment of status under section 246 of the Act, 8 U.S.C. § 1256 (1994), is useful here because Congress is presumed to intend identical meanings when it uses identical words. When adjustment of status is rescinded, the alien is returned to the status he would have if he had not obtained adjustment of status. A deportation order does not automatically ensue, and the Service still needs to pursue the alien's removal in deportation or removal proceedings where the alien may seek relief from deportation unavailable in section 246 proceedings. *See generally Matter of Belenzo*, 17 I&N Dec. 374, 383-84 (BIA 1980, 1981; A.G. 1981); 8 C.F.R. pt. 246 (1997); *cf.* 8 C.F.R. § 242.17 (1997). Similarly, rescission of an in absentia deportation order merely returns the respondent to the status he had if the order had not been issued, i.e., an alien subject to proceedings. Also, in keeping with the concept of annulment ab initio, the respondent's derivative relatives in section 246 rescission proceedings lose their status upon the rescission of the principal alien's adjustment. *See Matter of Valiyee*, 14 I&N Dec. 710 (BIA 1974). In contrast, familial derivatives of a lawful permanent resident do not lose their status if he is ordered deported and his status is terminated for misconduct after his lawful admission into the United States.

8 C.F.R. §§ 3.2(c), 3.23(b)(3) (1998). An order reopening proceedings is an interlocutory order allowing for such a hearing and does not dispose of the merits of the application for relief from deportation. *Matter of Ku, supra*, at 713; *see also Matter of Pena-Diaz*, 20 I&N Dec. 841 (BIA 1994). If, after reopening, the requested relief is denied, the respondent remains subject to the original finding of deportability and the respondent is ordered deported from the United States. When we reopen proceedings for a purpose other than rescission of an in absentia order, what transpired at previously conducted proceedings is not necessarily abrogated.

There are also other significant differences between a motion to reopen for purposes of rescission and a motion to reopen for other purposes. For example, the regulations specify that once there is a final administrative order of deportation, the district director may exercise his authority to issue an order of deportation. *See* 8 C.F.R. § 243.2 (1997); *see also* 8 C.F.R. § 241.2(a) (1998) (relating to removal proceedings); *cf.* 8 C.F.R. § 242.25 (1997) (relating to expedited deportation of aggravated felons). Absent a stay of deportation, a pending motion does not prevent the Service from executing the deportation order except in limited circumstances. *See* 8 C.F.R. §§ 3.2(f), 3.23(b)(1)(v), (4)(iii)(A) (1998). A motion to reopen in order to rescind pursuant to 8 C.F.R. § 3.23(b)(4)(iii)(A) is the only motion to reopen for which an automatic stay of deportation ensues, *see* 8 C.F.R. § 3.23(b)(4)(iii)(C), further evidencing that motions to reopen in order to rescind are different from motions to reopen for other purposes. *See Matter of Rivera*, 21 I&N Dec. 232 (BIA 1996); *cf. Matter of Ruiz*, 20 I&N Dec. 91 (BIA 1989) (discussing differences between reopening because an in absentia order should be set aside and reopening because other relief may be available that requires prima facie evidence of eligibility).

In the present case, the respondent was an alien charged with deportability for having entered the United States without a valid immigrant visa before her January 17, 1996, deportation hearing. If the January 17, 1996, deportation order were rescinded, the finding of deportability would be annulled and proceedings would return to the start. However, the respondent's motion does not challenge the finding of deportability. It explains why the respondent failed to attend her January 17, 1996, hearings, but only seeks reopening of the proceedings in order to address an entirely new question, her eligibility for adjustment of status. The respondent does not claim that her failure to notice that the Order to Show Cause contained a date for her previously scheduled deportation hearing constituted exceptional circumstances for purposes of rescission pursuant to section 242B(c)(3) of the Act. She claims, instead, that she is eligible for adjustment of status, that such relief from deportation is warranted as a matter of discretion, and that her deportation proceedings should be reopened so that she may establish her eligibility for such relief.

We agree with the respondent's contention that she may establish her

eligibility for adjustment of status at reopened deportation proceedings. We find that the requirements for rescission of an in absentia order are inapplicable to a motion to reopen that does not seek rescission of that order. Where the respondent only seeks reopening for relief from deportation without challenging the finding of deportability, the applicable section of the Act is section 242B(e)(1), which identifies the aliens precluded from obtaining certain forms of relief from deportation. This section specifies that if an alien fails to appear at a deportation hearing after receiving oral notice, in a language the alien understands, of the consequences of failing to appear, the alien is ineligible for 5 years for the forms of relief from deportation listed in section 242B(e)(5) of the Act. Conversely, if the oral warnings are not provided, relief is not precluded. To rule otherwise would render surplusage the requirement of section 242B(e)(1) that the oral warnings be given before the consequences ensue.

Section 242B(c)(3) of the Act, which only addresses the procedure for rescinding in absentia orders of deportation, cannot be read to negate the section 242B(e)(1) oral warnings requirement by implication. Any ambiguities in the language of section 242B(c)(3) that may imply that rescission of an in absentia order is a condition precedent to reopening an in absentia deportation order are removed by looking at the language of section 242B(e)(1), which specifically addresses the preclusive effect of in absentia deportation orders upon future applications for relief from deportation. The language of section 242B(e)(1) of the Act, requiring oral warnings of the consequences for failing to appear before precluding relief from deportation, is clear. Without reopening deportation proceedings, there is no forum available for an alien who has been served with an Order to Show Cause to apply for voluntary departure, suspension of deportation, or adjustment of status.

It is a well-settled rule of statutory construction that an entire statute must be read together because no part of it is superior to any other part, and therefore, if the meaning of a particular phrase or section is clear, no other part of the statute may be applied to create doubt. 2A N. Singer, *Sutherland Statutory Construction* (4th. ed. 1985); *accord United States v. Batchelder*, 581 F.2d 626 (7th Cir. 1978); *Preterm, Inc. v. Dukakis*, 591 F.2d 121 (lst Cir. 1979). "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Sav. Ass'n v. Timbers of Inwood Forest*, 484 U.S. 365, 371 (1988) (citations omitted); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987); *Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 631-62 (1973); *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307-08 (1961). We should not interpret the rescission provisions of section 242B(c) of the Act in such a way that they render the oral warnings language of section 242B(e)(1) surplusage. *See Kungys v. United States*, 485 U.S. 759

(1988); *Colautti v. Franklin,* 439 U.S. 379 (1979); *Jarecki v. G.D. Searle & Co., supra.*

Applying the rule of statutory construction, expressio unius est exclusio alterius, to the statutory language, we conclude that rescission under section 242B(c)(3) of the Act, based on the limited circumstances listed therein, should not be implied as an additional limitation upon reopening for other purposes when section 242B(e)(1) of the Act expressly requires that oral warnings under section 242B(a) of the Act be given before preclusion of relief. When read in its entirety, the language of section 242B impliedly excludes in absentia orders without such oral warnings from its prescribed preclusion. *See Matter of Lazarte*, 21 I&N Dec. 214 (BIA 1996); Singer, *supra*, § 47.23, at 194. The Decision rules of statutory construction require that the whole statute be given effect to avoid absurd results. Singer, *supra*, §§ 46.05, 46.06, 46.07, at 90, 104, 110. It would be absurd to preclude reopening by inference under section 242B(c)(3) of the Act where an alien is not precluded from relief under the express language of section 242B(e)(1) for the same conduct. Our finding is further supported by the holding of the United States Court of Appeals for the Ninth Circuit in *Lahmidi v. INS*, 149 F.3d 1011 (9th Cir. 1998), In that case, the court concluded that "subsections (a), (c), and (e) [of section 242B of the Act] must be read together, that the provisions are inextricably intertwined, and that the sanctions set forth in subsections (c) and (e) cannot be imposed unless the alien receives the procedural [notice] protections provided in subsection (a)." *Id.* at 1015.

A limited interpretation of section 242B(c)(1) of the Act would also be consistent with the language of the newly amended statute at sections 240(b)(5)(C) and (7) of the Act, 8 U.S.C. §§ 1229a(b)(5)(C) and (7) (Supp. II 1996), which retain the dichotomy in results between in absentia orders issued with or without such oral warnings. If Congress had intended that an alien ordered deported in absentia without oral warnings must nonetheless establish either exceptional circumstances, incarceration, or lack of notice for failing to appear before applying for new relief, it would not have repeated in a subsequent similar statute that in order to preclude relief the alien must receive oral notice that she may be barred from such relief.

## V. APPLICATION OF FACTS TO LAW

Upon our review of the record and the respondent's motion, we find that the respondent is entitled to a hearing on her application for adjustment of status. The respondent is not seeking, pursuant to section 242B(c)(3) of the Act, to rescind the order of deportation that was entered in her absence. Thus, the requirements for rescission are not applicable. Rather, the respondent is asking that her case be reopened so that she may apply for a form of

relief which was unavailable to her at the time of her hearing. The respondent's motion to reopen on this basis is subject to the regulatory requirements at 8 C.F.R. §§ 3.2(c) and 3.23(b), *See also Matter of Gutierrez*, 21 I&N Dec. 479 (BIA 1996); *Matter of Coelho*, 20 I&N Dec. 464 (BIA 1992). Further, where an alien is seeking previously unavailable relief and has not had an opportunity to present her application before the Immigration Judge, the Board will look to whether the alien has proffered sufficient evidence to indicate that there is a reasonable likelihood of success on the merits so as to make it worthwhile to develop the issues further at a full evidentiary hearing. *See Matter of L-O-G-*, 21 I&N Dec. 413 (BIA 1996).

In the present case, we find that the respondent has met the general motions requirements and has provided sufficient evidence to indicate a reasonable likelihood that her application may succeed on the merits. In particular, she has presented an approved visa petition as the spouse of a United States citizen, an application for adjustment of status, and other documentary evidence. The approved visa petition was unavailable when the Immigration Judge ordered the respondent deported in absentia on January 17, 1996, because it was only approved on May 24, 1996. Thus, the respondent has not only proffered sufficient evidence regarding her statutory eligibility for adjustment of status, but she has also presented new and previously unavailable information to demonstrate that reopening is warranted.

Given our disposition of this case, we need not determine at this time whether the respondent's reasons for her failure to attend her original deportation hearing would justify the denial of relief as a matter of discretion. The Immigration Judge must determine in each individual case the weight to be accorded to the respondent's explanation for failing to appear and whether such explanation is a favorable or adverse factor with respect to the ultimate discretionary determination. *See INS v. Doherty*, 502 U.S. 314 (1992); *INS v. Rios-Pineda*, 471 U.S. 444 (1985); *INS v. Phinpathya, supra; INS v. Wang*, 450 U.S. 139 (1981); *Matter of Edwards*, 20 I&N Dec. 191 (BIA 1990); *cf. Matter of Barocio*, 19 I&N Dec. 255 (BIA 1985) (discussing deliberate flouting of immigration laws as a serious adverse factor in discretionary determinations). Accordingly, we will sustain the respondent's appeal and grant her motion to reopen so that she may apply for adjustment of status.[5]

**ORDER:** The respondent's appeal is sustained.

**FURTHER ORDER:** The deportation proceedings are reopened, and the record is remanded to the Immigration Court for further proceedings consistent with this opinion.

---

[5]The respondent is free to renew her motion to change venue before the Immigration Court, without prejudice.

Board Member Lori L. Scialabba did not participate in the decision in this case.

*CONCURRING OPINION:*   John Guendelsberger, Board Member

I respectfully concur.

I fully concur in the majority's opinion in this case. I write separately to briefly address the dissent's assertion that "[s]ection 242B(c)(3) of the Act clearly states that where an in absentia order of deportation has been issued against an alien, the only relief available is to 'rescind' that order." The section contains no such statement. Section 242B(c)(3) of the Immigration and Naturalization Act, 8 U.S.C. § 1252b(c)(3) (1994), instead prescribes the exclusive method for rescinding such an order upon a motion to reopen in order to rescind. As the majority explains, rescission and reopening are words with different meanings, and legislative purpose is derived from the plain meaning of the words used in the statute as a whole. An order reopening proceedings is an interlocutory order prescribing a hearing because a new question must be resolved. *See Matter of Ku*, 15 I&N Dec. 712 (BIA 1976); 8 C.F.R. §§ 3.2(c), 3.23(b)(3) (1998). An order to rescind, by contrast, is a substantive determination to annul ab initio. *Black's Law Dictionary* 1306 (6th ed. 1990). To allow reopening of proceedings following the issuance of an in absentia order where rescission is not required by the statute does not contravene congressional intent, because the totality of the circumstances of the failure to appear may still be considered in the exercise of discretion for purposes of both reopening and adjudicating the underlying application for relief sought. Rescission requires a narrower inquiry as to whether exceptional circumstances existed for the failure to appear.

*DISSENTING OPINION:*   Gerald S. Hurwitz, Board Member, in which Fred W. Vacca, Michael J. Heilman, Patricia A. Cole, Lauren R. Mathon, and Philemina M. Jones, Board Members, joined

I respectfully dissent.

The question now before the Board is whether an alien who failed to appear at her deportation hearing and was ordered deported in absentia under section 242B(c)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1252b(c)(1) (1994), could have her deportation proceedings reopened without first being granted a rescission of the in absentia deportation order pursuant to section 242B(c)(3) of the Act. For the following reasons, I would find that such an alien must first have the deportation order rescinded before her deportation proceedings can be reopened.

## I. CONGRESSIONAL INTENT

The majority states in its opinion that section 242B of the Act does not clearly indicate whether an in absentia deportation order must always be rescinded before reopening deportation proceedings. The majority also states that we must look at Congress' intent in enacting this section of the Act to provide a reasonable interpretation and to resolve the issue at hand. However, the majority focuses on the use of the word "rescission" in the Act, and ignores the legislative history and the language of the Act as a whole. By doing so, the majority's opinion does not properly reflect the intent of Congress in enacting section 242B. The majority opinion effectively nullifies the strict 242B rescission provisions of the Act in the vast majority of motions to reopen.

It is obvious from the language of the Act that Congress was concerned with the aliens who failed to appear at their deportation hearings. Before the addition of section 242B to the Immigration and Nationality Act in 1990, Pub. L. No. 101-649, l04 Stat. 4978, which revised the procedures to be followed in deportation hearings. Congress asked the United States General Accounting Office ("GAO") to examine the procedures used at the time to deport and exclude aliens from the United States. In 1989, the GAO reported its findings to the Subcommittee on Immigration, Refugees, and International Law of the House Committee on the Judiciary. United States General Accounting Office, GAO/GDD-90-18, *Immigration Control: Deporting and Excluding Aliens From the United States* (Oct. 1989) [hereinafter GAO Report].

In its report, the GAO estimated that in 1987 about 27 percent of the aliens apprehended and placed in deportation proceedings in New York and Los Angeles failed to appear for their hearings. Their nonappearance was due in part to the general lack of repercussions for failing to appear. GAO Report, *supra*, at 3. Before Congress passed the Immigration Act of 1990, aliens who did not appear at their deportation hearings suffered no consequences. In fact, when aliens failed to appear, Immigration Judges often closed the aliens' cases, thereby allowing them to avoid deportation and profit from the delay in the deportation process to qualify for additional forms of relief.

Consequently, the GAO Report recommended, inter alia, that aliens in deportation proceedings be informed of their obligations to report for their hearings and of the possible consequences of their failure to appear, such as being ordered deported in absentia. GAO Report, *supra*, at 35. In addition, it recommended that aliens who failed to appear at a scheduled hearing for which they received proper notice be precluded from using the Immigration and Nationality Act's existing relief provisions. GAO Report, *supra*, at 52-53.

By adding the provisions contained in section 242B to the Immigration and Nationality Act, Congress clearly intended to target the type of indi-

viduals who had been violating the immigration laws without fear of suffering any consequences. The House report on the Immigration Act of 1990 explains the legislative purpose behind the new deportation provisions added to the Immigration and Nationality Act: "The Conference substitute includes several enforcement provisions designed to . . . ensure that aliens properly notified of impending deportation proceedings, or other proceedings, in fact appear for such proceedings." H.R. Conf. Rep. No. 101-955, at 132 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6784, 6797. This statement makes clear that Congress' paramount objective in enacting section 242B was to force aliens to attend their hearings. On the House floor, Representative Smith stated that the bill "will establish deadlines for filing appeals and help immigration judges hold in absentia hearings when aliens fail to appear." 136 Cong. Rec. H12,360 (daily ed. Oct. 27, 1990) (statement of Representative Lamar Smith).

Immigration Judges, who may have been reluctant to conduct in absentia hearings for fear of ordering aliens deported who may not have received notice, could now depend on these new provisions. By placing consequences on a failure to appear at a deportation hearing. Congress expected that aliens would take their scheduled appointments more seriously and bring these proceedings to a close.

The congressional scheme is based on the expectation that the alien placed in deportation proceedings will appear at her hearings. There was also an expectation that the alien would leave the United States after she had been ordered deported. Congress intended to dissuade aliens from not appearing at their deportation hearings and to bring finality to deportation proceedings. It follows then that, even where new relief becomes available, an alien with an in absentia deportation order should not be able to benefit from this relief because she has unlawfully remained in the country.

In accordance with congressional intent, the courts and this Board have generally disfavored motions to reopen a final deportation order. *Matter of Shaar*, 21 I&N Dec. 541 (BIA 1996). The Supreme Court has held that "[m]otions for reopening of immigration proceedings are disfavored for the same reasons as are petitions for rehearing and motions for a new trial on the basis of newly discovered evidence. This is especially true in a deportation proceeding, where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." *INS v. Doherty,* 502 U.S. 314, 323 (1992) (citations omitted); *see also Matter of Shaar, supra*, at 547; *Matter of Coelho*, 20 I&N Dec. 464, 472 (BIA 1992).

In interpreting the provisions of the statute, we must therefore bear in mind Congress' clear intent in enacting section 242B of the Act: (1) to ensure that aliens appear for their deportation hearings, (2) to bring finality to these proceedings, and (3) to prevent those individuals who ignore the immigration laws from benefitting from their unlawful status in this coun-

try. The majority opinion's reading of the statute, allowing an alien who has been ordered deported in absentia to have her deportation proceedings reopened through section 242B(e)(1) of the Act without first obtaining a rescission of the in absentia order through one of the three provisions listed in section 242B(c)(3) of the Act, fails to consider Congress' intent in its interpretation of the statute.

## II. LACK OF DISTINCTION BETWEEN MOTION TO REOPENAND MOTION TO RESCIND

The majority reaches its conclusion by attempting to distinguish motions to rescind from motions to reopen, but the arguments presented are not persuasive. Section 242B(c)(3) of the Act clearly states that where an in absentia order of deportation has been issued against an alien, the only relief available is to "rescind" that order. This is accomplished by filing a motion to reopen where an alien can establish that she did not get notice of her deportation proceedings, or was in custody and unable to appear through no fault of her own, or was prevented from appearing due to exceptional circumstances. *See Matter of W-F-*, 21 I&N Dec. 503 (BIA 1996) (holding that where an in absentia hearing results in an order of deportation, an alien seeking to challenge the entry of the in absentia order can only do so by the filing of a motion to reopen with the Immigration Judge); *Matter of Gonzalez-Lopez,* 20 I&N Dec. 644 (BIA 1993) (finding that a motion to reopen before an Immigration Judge is the exclusive method of reviewing and rescinding an in absentia order). When a deportation order is rescinded, the alien is given an opportunity to pursue her applications for relief from deportation, and a new order is entered.

Similarly, where an alien moves to reopen her deportation proceedings, she is effectively asking that the previous decision ordering her deported be set aside so that she may present new evidence to support an application for relief from deportation. *See* 8 C.F.R. §§ 3.2(c), 3.23(b)(3) (1998). Both a rescission of the deportation order and the reopening of the case result in the voiding of her previous order of deportation. In either situation a new order must be entered based on the evidence presented in the reopened proceedings.

It is also important to note that 8 C.F.R. § 3.23(b)(4)(iii)(A)(1) (1998) provides that a motion to reopen deportation proceedings to rescind an order of deportation entered in absentia must be filed within 180 days after the date of the deportation order if the alien demonstrates that her failure to appear at the hearing was because of exceptional circumstances. The motion to reopen can be filed at any time if the alien demonstrates that she did not receive notice of her hearing in accordance with section 242B(a)(2) of the Act. 8 C.F.R. § 3.23(b)(4)(iii)(A)(2). Because 8 C.F.R. § 3.23(b)(4)(iii)(A) contains language which mirrors the provisions of section

242B(c)(3) of the Act, I find that in order to reopen proceedings under 8 C.F.R. §§ 3.2 and 3.23, an alien must first meet the provisions of section 242B(c)(3) of the Act.

Because reopening and rescission render the identical result of voiding the previous order of deportation, where an alien is unable to rescind an in absentia deportation order through one of the provisions of section 242B(c)(3) of the Act, the section 242B bar to reopening must apply. *See Matter of Gonzalez-Lopez, supra.* An alien is therefore ineligible to reopen her deportation proceedings if her in absentia deportation order is not first rescinded.

### III. PURPOSE OF SECTION 242B(e) OF THE ACT

Further, I find that an alien cannot use the provisions of section 242B(e) of the Act to assist in her attempt to reopen her deportation proceedings. These provisions are not ameliorative; they are additional punitive measures. They serve as additional bars to relief, and may not be used as a way to give an alien the opportunity to apply for relief in further proceedings when she is unable to have her in absentia deportation order rescinded.

Section 242B(e)(1) of the Act provides that where an alien received notice of the consequences of failing to attend a deportation proceeding and subsequently has a final order of deportation entered against her in absentia, the alien will not be eligible for certain forms of relief, including adjustment of status under section 245 of the Act, 8 U.S.C. § 1255 (1994), for a period of 5 years after the date of entry of the final order of deportation. This section does not provide for relief from deportation through a motion to reopen, as the majority proposes. On the contrary, section 242B(e)(1) of the Act only limits the relief available to an alien who fails to appear at a scheduled hearing and is subsequently ordered deported in absentia.

In contrast, the provisions of section 242B(c) of the Act do provide relief from an in absentia order of deportation through a motion to reopen to rescind. If Congress had intended for the provisions of section 242B(e)(1) of the Act to be ameliorative instead of punitive, it would have added language to direct an alien to seek that type of relief. This additional bar to relief is a clear indicator of Congress' intent to bring finality to the deportation proceedings of aliens, particularly those who disregard notices and warnings. To allow reopening where Congress has clearly not provided that remedy violates the intention of both sections of the Act.

### IV. APPLICATION OF FACTS TO LAW

In applying the facts of the instant case to the law as outlined above, I find that the respondent has failed to establish a valid reason to rescind and

reopen her deportation proceedings. The respondent has admitted that she personally received an Order to Show Cause from an asylum officer on August 16, 1995. The Order to Show Cause clearly indicated on page 3 that the respondent's deportation hearing was scheduled for January 17, 1996. The respondent received proper notice of the time and place of her deportation proceeding through the personal service of the Order to Show Cause. Therefore, the notice requirements under section 242B(a)(2) of the Act have been met. *See generally Matter of Gonzalez-Lopez, supra.*

Having determined that the respondent received proper notice of her deportation hearing through the Order to Show Cause, the Immigration Judge properly conducted the hearing in absentia. *See* 8 C.F.R. § 3.26(b) (1996); *cf. Matter of Nafi*, 19 I&N Dec. 430 (BIA 1987) (finding that where an applicant for admission has notice of his exclusion hearing and fails to appear, the Immigration Judge may, in his discretion, find that the applicant has failed to establish his admissibility and has abandoned any applications for relief from exclusion, and may order him excluded and deported).

Under section 242B(c)(3) of the Act, an in absentia order of deportation may be rescinded only upon a motion to reopen filed within 180 days after the date of the order of deportation if the alien demonstrates that her failure to appear was due to exceptional circumstances, or upon a motion to reopen filed at any time if the alien demonstrates that she did not receive notice of the hearing or that she was in Federal or State custody.[6] The statute does not provide for any other way to rescind an in absentia order of deportation.

The respondent's excuse for failing to appear at her hearing does not come close to establishing exceptional circumstances. *See Matter of W-F-, supra* (finding that an alien's failure to appear for his deportation hearing because he was on a fishing vessel for employment reasons does not rise to the level of exceptional circumstances as set forth in the Act); H.R. Conf. Rep. No. 101-955, at 132 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6784, 6797 ("[T]he conferees expect that in determining whether an alien's failure to appear was justifiable the Attorney General will look at the totality of the circumstances to determine whether the alien could not reasonably have been expected to appear.")

The respondent did not attend her deportation hearing because she was allegedly informed that a formal notice would be mailed to her. Nevertheless, the respondent was personally provided a copy of her Order to Show Cause, in which it was clearly indicated that she was scheduled to appear at her hearing on January 17, 1996. There was no requirement or

---

[6]The respondent does not assert that she failed to appear at her deportation hearing because she did not receive notice of her deportation hearing or because she was in Federal or State custody. Therefore, I do not address these means of rescinding a deportation order issued in absentia.

reasonable expectation that a further "formal notice" would excuse her from her responsibility to appear at that hearing. The respondent's situation has not been shown to be "exceptional," or in any way beyond her control. Under a totality of the circumstances, it was reasonable to expect the respondent in the present case to appear at her deportation hearing.

The respondent did not provide any valid reason for not appearing at her deportation hearing. She received proper notice of her hearing through the Order to Show Cause and she did not establish exceptional circumstances for failing to attend the hearing. I find that she is statutorily barred from rescinding her in absentia order of deportation under section 242B(c)(3) of the Act. Consequently, the respondent is unable to reopen her deportation proceedings, and the Immigration Judge properly denied her motion to reopen. Furthermore, because section 242B(e)(1) of the Act creates an additional barrier and does not ameliorate the rescission provisions of section 242B(c) of the Act, I find that the respondent is unable to use this provision to have her deportation proceedings reopened.

## V. CONCLUSION

In view of the legislative history preceding the enactment of section 242B and the language used, both of which provide guidance as to congressional intent. I conclude that an alien, who fails to appear at her deportation hearing and is subsequently ordered deported in absentia under section 242B(c)(1) of the Act, can only reopen her deportation proceedings if her in absentia order is rescinded through one of the three provisions of section 242B(c)(3) of the Act. I disagree with the majority's view that the proceedings can be reopened for subsequent relief through a motion to reopen absent a rescission of the original in absentia deportation order. The majority's interpretation essentially eliminates the need to comply with the strict requirements set forth in section 242B in the vast majority of motions to reopen made subsequent to the entry of an absentia order. This reasoning is not consistent with congressional intent.

I would find that the respondent in the present case is precluded from reopening her deportation proceedings because she has failed to establish exceptional circumstances and is unable to rescind her in absentia deportation order. I would also affirm the Immigration Judge's decision denying the respondent's motion to reopen her deportation proceedings held in absentia.

Accordingly, I would dismiss the respondent's appeal.