**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

AUG 22 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

KUMAR CHETTRI,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

No. 20-73018

Agency No. A072-131-283

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted August 17, 2023[**]
Pasadena, California

Before: WARDLAW, CHRISTEN, and SUNG, Circuit Judges.

Kumar Chettri petitions for review of the Board of Immigration Appeals'

(BIA) order denying his 2020 motion to reopen. Chettri was ordered removed *in*

*absentia* in 1996 and has since filed four unsuccessful motions to reopen in 2000,

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

2011, 2018, and 2020.  We denied Chettri's petitions for review of the BIA's denial of his 2000 and 2011 motions, *see Chettri v. INS*, 33 F. App'x 350 (9th Cir. 2002); *Chettri v. Lynch*, 650 F. App'x 323 (9th Cir. 2016), and Chettri did not seek review of the BIA's decision denying his 2018 motion.  In his denied 2020 motion, Chettri requested that the BIA rescind his *in absentia* order of deportation as improperly issued, reopen his proceedings so that he would be able to apply for relief based on changed country conditions, *sua sponte* reopen his proceedings, or reissue its denial of his 2018 motion so that he would be able to seek review of that decision.  We have jurisdiction pursuant to 8 U.S.C. § 1252, and we deny the petition for review.

We review the BIA's denial of a motion to reopen for abuse of discretion and will not overturn the decision unless the Board acted "arbitrarily, irrationally, or contrary to law."  *Najmabadi v. Holder*, 597 F.3d 983, 986 (9th Cir. 2010).  BIA decisions denying *sua sponte* reopening are reviewed only to determine if the Board relied on an incorrect legal premise.  *Bonilla v. Lynch*, 840 F.3d 575, 588 (9th Cir. 2016).

1.  The BIA did not abuse its discretion when it declined to rescind Chettri's *in absentia* removal order.  Chettri argues that the removal order was improperly issued because he did not receive a translation of the Order to Show Cause (OSC)

2

in a language he could understand, nor an oral warning about the consequences of failing to appear. As the BIA observed, motions to rescind *in absentia* removal orders based on lack of notice must be filed with the Immigration Judge (IJ), not the BIA. *See* 8 C.F.R. §§ 1003.2, 1003.23(b)(4)(iii). But to the extent Chettri's motion can be construed as a motion for the BIA to remand to the IJ to determine whether to rescind the *in absentia* removal order, the BIA did not abuse its discretion in determining the removal order was properly issued.

Chettri relies on a misreading of *Matter of M-S-*, 22 I. & N. Dec. 349 (B.I.A. 1998), to assert that his removal order must be rescinded because he never received an oral warning of the consequences of failing to appear at his removal hearing. *Matter of M-S-* concerned former INA § 242B(e)(1), which provided that noncitizens removed *in absentia* were ineligible for certain forms of relief for five years after removal if they were "provided oral notice, either in the alien's native language or in another language the alien understands, of the time and place of the proceedings and of the consequences . . . of failing . . . to attend a proceeding." *Matter of M-S-* considered how this provision applied to a noncitizen removed *in absentia* who sought to reopen proceedings to seek adjustment of status. *See* 22 I. & N. Dec. at 356–57. *Matter of M-S-* discussed oral warnings as relevant only to whether a noncitizen removed *in absentia* was subsequently barred from seeking

certain forms of relief. Here, the Board did not hold that Chettri was ineligible to apply for immigration relief; instead, it held that his motion to reopen in order to do so was untimely and number-barred.

Regarding Chettri's observation that he did not receive a written translation of the OSC in a language that he could understand, the record shows that he was personally served with the OSC, understood from conversations with others that he was supposed to appear in immigration court, and chose not to appear because he was scared of being detained or deported. Though Chettri may not have understood that failing to appear could result in *in absentia* removal, the regulation only requires that the noncitizen "receive[d] notice" of the hearing, not that they were made aware of the consequences of failing to appear. *See* 8 C.F.R. § 1003.23(b)(4)(iii)(A)(2); *see also Khan v. Ashcroft*, 374 F.3d 825, 828 (9th Cir. 2004) (noting that neither statutory notice requirements nor implementing regulations "require that INS provide those notices in any language other than English").

2. The BIA did not abuse its discretion when it denied Chettri's motion to reopen based on changed country conditions. Chettri's 2020 motion repeated claims from his 2011 and 2018 motions that, contrary to the information in his 1993 asylum application and 2000 motion to reopen, he is a native and citizen of

Nepal whose family members were murdered in a politically motivated attack by a Maoist group. Chettri's 2020 motion incorporated by reference the supporting evidence submitted with his unsuccessful 2018 motion. The BIA therefore concluded that the 2020 motion "d[id] not include any new, authenticated evidence to establish [Chettri's] identity or his claimed status as a citizen and national of Nepal."

Chettri argues that the BIA improperly disregarded his evidence by relying on its previous denial of the 2018 motion, which, in Chettri's view, applied an incorrect authentication standard and made an unauthorized credibility determination. Chettri could have raised these arguments if he had petitioned for review of the BIA's denial of his 2018 motion, but he failed to do so. And though his 2020 motion requested that the BIA reissue its denial of the 2018 motion, the BIA declined to do so. Chettri does not challenge that part of the BIA's decision in his petition for review. We therefore conclude that the BIA did not abuse its discretion by determining that it had already considered and rejected Chettri's arguments regarding changed country conditions.

3. The BIA's denial of *sua sponte* reopening was not premised on legal error. Chettri argued in his 2020 motion that a combination of factors—"the failure to receive oral warnings at the time of issuance of the OSC," mistreatment

upon his arrival in the United States, "abuse by his former spouse," "the murder of his family in Nepal," and ineffective assistance of his former counsel—created an "exceptional situation" warranting *sua sponte* reopening.  In addition to his arguments regarding legal error in the BIA's denial of his 2018 motion, Chettri asserts that the BIA committed legal error when analyzing his claims regarding oral warnings and ineffective assistance of counsel (IAC).  As discussed above, we see no error in the BIA's conclusion that an oral warning was not required for Chettri's *in absentia* removal.

Chettri's IAC claim concerns the performance of his former counsel, who prepared Chettri's unsuccessful 2000 motion to reopen to apply for protection under the Convention Against Torture (CAT), a form of relief that did not become available until after Chettri was ordered removed.  The 2000 motion perpetuated Chettri's admittedly false claims from his 1993 asylum application that he was a citizen of India who had suffered torture and death threats based on his Hindu descent.  The IJ denied the motion to reopen as untimely, explaining that a noncitizen whose removal order became final prior to March 22, 1999 was eligible to have his proceedings reopened to apply for CAT protection only if he filed a motion prior to June 21, 1999.  Because Chettri did not file his motion until March 29, 2000, it was untimely.

Chettri argues that his former counsel was ineffective because she "filed a motion under the CAT for the Petitioner . . . without even verifying any of the information with the Petitioner or obtaining a supporting declaration," therefore perpetuating his false claims to Indian citizenship. Under *Matter of Lozada*, an immigration petitioner making an IAC claim generally must: (1) submit an affidavit detailing the agreement with their former counsel; (2) notify their former counsel and afford them an opportunity to respond; and (3) state whether they filed a disciplinary complaint. *See* 19 I. & N. Dec. 637, 639 (B.I.A. 1988), *overruled in part on other grounds by Matter of Compean*, 24 I. & N. Dec. 710 (2009). If a petitioner does not comply with *Matter of Lozada*, their IAC claim can succeed only if their counsel's performance was facially deficient and prejudiced the petitioner. *See Guan v. Barr*, 925 F.3d 1022, 1033 (9th Cir. 2019).

Chettri did not comply with *Matter of Lozada*, and he has not established that his former counsel's performance was facially deficient or prejudicial. It was not facially unreasonable for Chettri's counsel to rely on the information in his asylum application. Additionally, including a declaration from Chettri would not have affected the outcome of the 2000 motion because the IJ denied the motion as untimely and did not reach the merits. Chettri could not have claimed the changed country conditions exception to untimeliness in 2000 because he did not learn

7

about the murder of his family members until 2008. Further, as the BIA noted, Chettri did not exercise due diligence in raising his IAC claim because he would have learned about the underlying facts by 2011 at the latest, and he did not raise the IAC claim until 2020. *See Perez-Camacho v. Garland*, 54 F.4th 597, 606 (9th Cir. 2022) ("The party invoking equitable tolling must have been prevented from obtaining vital information bearing on the existence of the claim despite the exercise of all due diligence." (citation and internal quotation marks omitted)). We conclude that the BIA's analysis of Chettri's IAC claim was not legally erroneous.

The motions for a stay of removal (Dkt. No. 1) and supplemental motion for stay of deportation (Dkt. No. 5) are denied.

**PETITION FOR REVIEW DENIED.**