**Song Jin WU, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**Docket No. 99–4148.**

United States Court of Appeals, Second Circuit.

Argued Dec. 7, 2004.

Decided Jan. 24, 2006.

Theodore N. Cox, New York, New York (Joshua E. Bardavid, Law Office of Theodore N. Cox, New York, New York, of counsel), for Petitioner.

Patricia Buchanan, Assistant United States Attorney, New York, New York (David N. Kelley, United States Attorney, Megan L. Brackney, Sara L. Shudofsky, Assistant United States Attorneys, Southern District of New York, New York, New York, of counsel), for Respondent.

Before: CARDAMONE, JACOBS, and CABRANES, Circuit Judges.

CARDAMONE, Circuit Judge.

This case comes to us on a petition for review of a decision of the Board of Immigration Appeals (BIA or Board) dismissing petitioner Song Jin Wu's (Wu or petitioner) appeal from an immigration judge's (IJ) decision denying Wu's motion to reopen an *in abstentia* order of deportation. The BIA refused to reopen Wu's case without mentioning his contention that the law had changed rendering him eligible for asylum. That was an abuse of the Board's discretion, and we therefore grant Wu's petition and remand to allow him an opportunity to present his claims.

## FACTS

### A. *Background*

Petitioner is a 43–year–old male from Fujian province in the People's Republic of China. According to Wu, he and his wife married in 1981. Wu contends that after the birth of the couple's second child, the Chinese government forced his wife to have an Intrauterine Device implanted, which his wife later had removed with the assistance of a private doctor. Wu's wife gave birth to a third child in 1989. Petitioner asserts that upon learning of the birth of the couple's third child, Chinese officials became "very angry," required his wife to undergo forced sterilization, and fined the family 8,000 yuan. Petitioner maintains that he spoke out against China's family planning policies at a village meeting in early 1994 and left China soon after, purportedly because he was afraid Chinese officials would punish him for his conduct.

### B. *Wu's Entry into the United States and Immigration Court Proceedings*

Wu entered the United States illegally through Puerto Rico on January 26, 1994. On his original arrival-departure record, he indicated his U.S. address was 5485 8th Avenue, Brooklyn, New York. Petitioner applied for asylum on February 8, 1994 and his attorney filed a bond reduction request that listed Wu's address as 5405 8th Avenue, Brooklyn, New York. An IJ granted the request and petitioner was released from custody in March 1994. Wu's attorney listed the 5405 address on a subsequent motion for a change of venue to New York City, which an IJ granted on March 21, 1995.

On August 7, 1995 the immigration court in New York City sent notice by certified mail to Wu's attorney of record, Renrong

Pan, that a master calendar hearing in Wu's case was scheduled for October 20, 1995. A person in Pan's office acknowledged receipt of the certified mailing on August 9, 1995. The court also sent notice by certified mail to Wu at 5405 8th Avenue, Brooklyn, New York, but that mailing was returned as unclaimed, apparently because Wu's actual address was 5485 8th Avenue. Petitioner asserts his attorney did not notify him of the pending hearing. On October 20, 1995 Wu failed to appear at his asylum hearing and the IJ, Judge Videla, ordered Wu deported *in absentia*.

Petitioner asserts that at the time he did not know of these developments. Rather, he contends, after hearing nothing from his attorneys regarding his asylum application, he obtained new counsel and submitted a second asylum application to the INS on April 14, 1994. An INS hearing officer referred Wu's case to the immigration court on October 31, 1995, and a hearing on the merits was scheduled for August 28, 1997 before Immigration Judge Lamb. On that date, Judge Lamb learned that Wu was subject to the outstanding order of deportation issued by Judge Videla and terminated this second proceeding.

Wu filed a motion to reopen on June 22, 1998 stating he was not aware he had been ordered deported by Judge Videla. He indicated his asylum claim was based upon persecution by family planning officials in China and urged that the deportation order be rescinded. This motion, though addressed to Judge Lamb, was redirected by court administrators to Judge Videla's docket.

On September 2, 1998 Judge Videla denied Wu's motion on the basis of Immigration and Nationality Act (INA) § 242B(c)(3), 8 U.S.C. § 1252b(c)(3) (1994) (repealed, effective 1997, and recodified, as amended, without material change, at 8 U.S.C. § 1229a(b)(5)(C) (2005)). This sec-

tion of the INA states that *in absentia* orders of deportation may only be rescinded if the alien files a motion to reopen within 180 days of the order of deportation and exceptional circumstances explain his failure to appear, or if the alien did not receive proper notice of the deportation hearing. Judge Videla concluded that Wu received proper notice because notice was sent to Wu's attorney of record by certified mail. He also found that Wu did not file the motion within 180 days of the *in absentia* order of deportation, and was therefore barred from asserting exceptional circumstances justifying his failure to appear. Wu appealed Judge Videla's order to the BIA.

### C. Board of Immigration Appeals Decisions

On appeal to the BIA, petitioner argued that the Board should overturn Judge Videla's denial of his motion to reopen because petitioner did not receive notice of the final deportation order. Wu also maintained that he and his family suffered past persecution in China due to that country's restrictive family planning policies and, more specifically, that "[a]n alien whose spouse was forced to undergo an abortion or sterilization procedure can establish past persecution on account of political opinion and qualifies as a refugee within the definition of section 101(a)(42) of the [Immigration and Nationality] Act, 8 U.S.C. § 1101(a)(42) (1994), as amended by section 601(a)" of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). The BIA initially dismissed Wu's appeal as untimely, but subsequently reinstated the appeal by granting a motion, based on petitioner's attorney's inability to timely obtain the records of Wu's prior immigration proceedings, to reopen and reconsider. In connection with that motion Wu argued

that his case was "founded upon the change in law relating to past persecution of the spouse of a respondent who violated birth control policies in the People's Republic of China."

On August 31, 1999 the BIA dismissed Wu's appeal. It agreed with Judge Videla that petitioner was properly served with notice of the October 20, 1995 hearing and that Wu's motion to reopen was untimely. The Board did not mention, let alone address, Wu's change-of-law argument.

On September 23, 1999 petitioner's counsel filed with the BIA a motion to reconsider. Petitioner argued his case should be reopened because of the above described change in law, the fact that he would be tortured if returned to China, and the purported ineffectiveness of his prior attorney. The BIA denied Wu's motion on March 9, 2000 finding Wu failed to present additional arguments, a change in law, or an aspect of the case that was overlooked. The BIA also noted that, under the circumstances, Wu's motion to reconsider could be deemed a successive motion to reopen that was number-barred under a regulation that prohibits filing more than one motion to reopen with the Board of Immigration Appeals, 8 C.F.R. § 3.2(c)(2) (2000) (now codified at 8 C.F.R. § 1003.2(c)(2) (Feb. 28, 2003)).[1] The Board also refused to consider Wu's Convention Against Torture (CAT) claim because the motion was not filed by the administrative deadline of June 21, 1999, see 8 C.F.R. § 208.18(b)(2) (2000), and because petitioner failed to make a *prima facie* showing of entitlement for relief un-

der the CAT, see 8 C.F.R. § 208.16(c) (2000).

According to petitioner's notice of appeal, he seeks review only of the Board's August 31, 1999 decision, not its later March 9, 2000 decision. Although petitioner had made his change-in-law argument in the earlier appeal to the BIA, the Board did not at that time address this argument. The Board did not, however, deem the change-in-law argument waived for it considered the argument in its March 9, 2000 decision.

## DISCUSSION

### I Petitioner's Asylum Claim

#### A. *Standard of Review*

We review the decision of the BIA to deny a motion to reopen for abuse of discretion. See *Guan v. Bd. of Immigration Appeals*, 345 F.3d 47, 48 (2d Cir. 2003). "An abuse will be found only in those limited circumstances where the BIA's decision (1) provides no rational explanation, (2) inexplicably departs from established policies, (3) is devoid of any reasoning, or (4) contains only summary or conclusory statements." *Zhao v. U.S. Dep't of Justice*, 265 F.3d 83, 93 (2d Cir. 2001).

#### B. *Government's Objection to Our Review*

The government, citing 8 U.S.C. § 1105a(c) (1994) (repealed, effective 1997), asserts petitioner did not properly raise his change-in-law argument before the IJ and BIA, and therefore did not

1. A motion to reopen for purposes of rescinding an *in absentia* deportation order is distinguished from a motion to reopen for purposes of addressing a change in law because the former seeks to restart proceedings as if the previous proceedings never occurred. *See In re M–S–*, 22 I & N Dec. 349, 352–54 (BIA 1998). Different requirements pertain to each type of motion to reopen, and thus, although both are technically motions to reopen, for purposes of clarity we shall refer to the former as a "motion to rescind" and the latter as a "motion to reopen."

exhaust his administrative remedies and preserve the issue for our review. To the contrary, we note that Wu raised his change-in-law argument before both the BIA and IJ. In his brief in support of his appeal to the BIA of the denial of his motion to reopen, Wu expressly stated that after the IJ's decision ordering him deported *in absentia*, the law had been amended to allow an alien whose spouse was forcibly sterilized or compelled to have an abortion to establish persecution on that basis and therefore qualify for asylum. Petitioner repeated this argument in his motion to reopen and reconsider the BIA's initial dismissal of his appeal for untimeliness, and he repeated it again in his September 23, 1999 motion to reconsider. We therefore conclude that Wu exhausted his administrative remedies.

### C. *Motion to Rescind*

██ The requirements of former 8 U.S.C. § 1252b (1994) (repealed, effective 1997) govern Wu's motion to rescind Judge Videla's deportation order. Proper notice under that statute includes "written notice ... given in person to the alien (or, if personal service is not practicable, written notice ... given by certified mail to the alien or to the alien's counsel of record, if any)." § 1252b(a)(2)(A) (repealed, effective 1997). Personal notice may not be practicable when an alien does not appear physically before an IJ, *see In re Grijalva*, 21 I & N Dec. 27, 35 (BIA 1995), and therefore service by certified mail was a proper method of notice in this case. Mailing notice to a petitioner's last known address satisfies the § 1252b(a)(2)(A) notice requirement, even if the notice is returned as unclaimed, *see Fuentes–Argueta v. INS*, 101 F.3d 867, 871–72 (2d Cir.1996), as does mailing the notice to the applicant's counsel of record, § 1252b(a)(2)(A); *Scorteanu v. INS*, 339 F.3d 407, 412 (6th Cir.2003).

The immigration court sent notice of Wu's October 20, 1995 hearing to his last known address by certified mail, which was returned because Wu's attorney provided an incorrect address for petitioner. There is no evidence that delivery was improper or that nondelivery was not due to Wu's failure to provide his correct address. *See Fuentes–Argueta*, 101 F.3d at 871. Thus, Wu failed to rebut the presumption of proper notice. *Id.* Moreover, Wu's attorney of record received notice of the hearing by certified mail. In such a circumstance, an applicant is entitled to rescission of the order only if he files a motion to rescind within 180 days of the order of deportation and shows that his failure to appear was the result of exceptional circumstances. § 1252b(c)(3)(A) (repealed, effective 1997). Wu filed his motion to rescind more than two-and-a-half years after he was ordered deported *in absentia*. The motion was thus time-barred and the immigration court was without power to consider petitioner's assertion of exceptional circumstances. The BIA did not, therefore, abuse its discretion in affirming Judge Videla's decision to deny Wu's motion to rescind.

### II Substance of Wu's Change–in–Law Argument

██ Although Wu is not entitled to rescission of the *in absentia* deportation order, he may nonetheless be entitled to have his case reopened due to an intervening change in law. When the BIA reviews an IJ's denial of a motion to reopen, it must "address all the factors relevant to petitioner's claim." *Zhao*, 265 F.3d at 97. It must also apply its own standards and precedent consistently when faced with similar facts. *Id.* at 95. Failure to do either constitutes an abuse of discretion. *Id.* at 95, 97.

In its August 31, 1999 decision denying Wu's appeal of Judge Videla's September 2, 1998 denial of Wu's motion to reopen, the BIA did not mention Wu's change-in-law argument. Moreover, in its March 9, 2000 decision denying Wu's motion to reconsider, the Board erroneously stated that Wu failed to raise a change in law at all.

However, in order for Wu's change-in-law argument to be relevant, it must be based on an actual change in the law that favorably affects his asylum claim. At the time Wu was ordered deported *in absentia,* coercive family planning policies, including forced abortion and sterilization, were not *per se* persecutive, and therefore aliens alleging they had been subjected to such policies could not, on that fact alone, qualify for asylum. *See In re Chang,* 20 I & N Dec. 38, 44 (BIA 1989). Instead, an alien had to prove that the policy was selectively applied to persecute members of a group based on race, religion, nationality, or political opinion. *See id.* at 44, 47.

In 1996 Congress expressly rejected this rule, stating in the IIRIRA that persecution or a well-founded fear of persecution on the basis of political opinion encompasses the application of forced abortion or sterilization and resistance to such coercive family planning policies. IIRIRA, Pub.L. No. 104-208, Div. C, § 601(a)(1), 110 Stat. at 3009-689 (codified at 8 U.S.C. § 1101(a)(42)). The BIA held that § 601(a) of IIRIRA retroactively superseded its holding in *In re Chang,* and therefore an applicant who has suffered forced sterilization qualifies as a refugee because she has, as a matter of law, suffered past persecution on account of her political opinion. *See In re X-P-T-,* 21 I & N Dec. 634, 636 (BIA 1996). The BIA subsequently held that § 601(a) protected not only the person forced to undergo the harmful coercive family planning action, but also that person's spouse. *In re C-Y-Z-,* 21 I & N Dec. 915, 918–19 (BIA 1997). This change in law is relevant to Wu's asylum claim because it potentially affords grounds for discretionary relief that were not available at the time he was ordered deported *in absentia.*

In *In re M-S-,* 22 I & N Dec. 349, 352–56 (BIA 1998) (en banc) the BIA explained that an *in absentia* deportation order need not always be rescinded before it can be reopened. Thus, "the requirements for rescission of an in absentia order are inapplicable to a motion to reopen that does not seek rescission of that order." *Id.* at 355. Instead, in cases in which an alien seeks reopening without challenging the IJ's deportability finding, the Board found that INA § 242B(e)(1), 8 U.S.C. § 1252b(e)(1) (repealed, effective 1997) governs; § 242B(e)(1) states that relief is not precluded unless an alien received an *oral* warning, in a language he understands, regarding the consequences of a failure to appear. *In re M-S-,* 22 I & N Dec. at 355. If no oral warning is given, or the type of relief sought is not enumerated in INA § 242B(e)(5), 8 U.S.C. § 1252b(e)(5) (repealed, effective 1997) (itemizing various forms of relief but not listing asylum),

> where the alien is seeking previously unavailable relief and has not had an opportunity to present her application before the Immigration Judge, the Board will look to whether the alien has proffered sufficient evidence to indicate that there is a reasonable likelihood of success on the merits so as to make it worthwhile to develop the issues further at a full evidentiary hearing.

*In re M-S-,* 22 I & N Dec. at 357.

The BIA did not mention *In re M-S-* in its August 31, 1999 decision dismissing Wu's appeal, and it did not address the fact that Wu raised a change-in-

law argument. Rather, the Board dismissed the appeal solely on the ground that Wu failed to establish a sufficient basis for rescinding Judge Videla's *in absentia* deportation order. The Board compounded this error by then relying on *In re M–S–* in its March 9, 2000 decision to construe Wu's subsequent motion to reconsider as a successive motion to reopen that was number-barred under 8 C.F.R. § 3.2(c)(2) (1998) ("Except as [otherwise] provided ... a party may file only one motion to reopen deportation or exclusion proceedings.") (now codified at 8 C.F.R. § 1003.2(c)(2) (Feb. 28, 2003)). This was double error because a motion to reconsider is proper when a petitioner alleges that the Board committed a legal or factual error in its previous disposition of his case based on the record as it existed at the time of the first decision. *See Zhao*, 265 F.3d at 90, 91 (citing *In re Cerna*, 20 I & N Dec. 399, 402 (BIA 1991)). Since Wu's motion to reconsider asked the Board to reevaluate its August 31 ruling in light of its failure to address his properly presented change-in-law argument, that motion should not have been construed as a motion to reopen.

In this case, there is no evidence petitioner received the requisite oral warning before he was ordered deported *in absentia* and, in any event, the relief he seeks— asylum—is not one of the enumerated forms of relief subject to the five-year bar under INA § 242B(e)(5). Thus, because Wu did raise a change-in-law argument relevant to his claim—and the Board would have had to apply its own standards inconsistently to ignore that argument— we conclude that the Board abused its discretion. Although the Board correctly held that Wu was not entitled to rescission of his *in absentia* deportation order, it should have addressed his alternative change-in-law argument in determining whether to grant his motion to reopen and

to hold an evidentiary hearing. *See In re M–S–*, 22 I & N Dec. at 353–54.

It is not the function of a reviewing court in an immigration case to scour the record to find reasons why a BIA decision should be affirmed. Rather, we take the Board's decision as we find it, and if the reasoning it advances for denying a petitioner's claim cannot support the result, we will vacate the decision. As a consequence, we vacate the BIA's August 31, 1999 decision insofar as it affirmed the IJ's denial of petitioner's motion to reopen on the basis of newly available relief and remand to allow the Board to conduct the inquiry required by *In re M–S–*.

### III   Petitioner's Claim for Relief Under the CAT

██ Petitioner further declares that the BIA erred in rejecting his claim that he will be tortured if returned to China as time-barred under 8 C.F.R. § 208.18(b)(2). He maintains that U.S. obligations under the CAT override the regulatory requirements governing motions to reopen, when an alien might suffer torture upon return to his country of origin. However petitioner did not raise his CAT claim until he filed his motion to reconsider with the BIA on September 23, 1999, and the Board therefore only addressed the argument in its March 9, 2000 decision. Petitioner has not petitioned for review of that decision. We cannot consider Wu's CAT claim therefore because, although we may discuss the BIA's reasoning in its March 9 decision insofar as such is relevant to our direct review of the August 31 decision (as we did with respect to Wu's change-in-law argument), the March 9 decision is not properly presented for our direct review.

Moreover, even assuming the issue was properly presented, petitioner has offered no evidence that he has been or risks

being tortured in China. Instead, petitioner relies solely on the bald assertion in his motion to reconsider that he is subject to torture if returned to China. Petitioner has therefore failed to make out a *prima facie* case for relief under the CAT as required by 8 C.F.R. § 208.16(c) (2000), and were we to review this claim directly, we would likely find that the BIA properly denied his claim.

### CONCLUSION

Although the procedural history of this case is complex, we hold that the Board committed a straightforward legal error: it failed to consider petitioner's properly presented change-in-law argument despite the fact that its prior precedent required it to do so. We therefore grant Wu's petition for review and remand to the BIA for further proceedings consistent with this opinion. Having considered petitioner's other arguments, we find them all to be without merit.