**Ionica LUPULESCU, Petitioner,**

v.

**Michael B. MUKASEY, Attorney General,[1] Respondent.**

No. 03–4337–ag.

United States Court of Appeals, Second Circuit.

Feb. 19, 2008.

---

1. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Attorney General John Ashcroft as a respondent in this case.

Michael P. DiRaimondo, Melville, NY, for Petitioner.

Gregory F. Van Tatenhove, United States Attorney, Eastern District of Kentucky, John S. Osborn, III, Assistant United States Attorney, Lexington, KY, for Respondent.

PRESENT: JOSÉ A. CABRANES, B.D. PARKER, and REENA RAGGI, Circuit Judges.

### SUMMARY ORDER

Petitioner Ionica Lupulescu, a native and citizen of Romania, seeks review of the January 21, 2003 order of the BIA denying his motion to reopen. *In re Ionica Lupulescu,* No. A73 462 615 (B.I.A. Jan. 21, 2003). We assume the parties' familiarity with the underlying facts and procedural history of the case.

We review the BIA's denial of a motion to reopen for abuse of discretion. *See Kaur v. BIA,* 413 F.3d 232, 233 (2d Cir. 2005) (per curiam). An abuse of discretion may be found where the BIA's decision "provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements; that is

to say, where the Board has acted in an arbitrary or capricious manner." *Id.* at 233–34.

■ As a preliminary matter, although Lupulescu now argues that the BIA should have construed his motion as both a motion to reopen and an earlier motion to rescind an order of removal entered *in absentia, see* 8 U.S.C. § 1252b(c)(3)(B) (1995) (repealed, effective 1997) (motions to rescind), the motion he presented to the IJ and the BIA did not request rescission of his *in absentia* order. Rather, Lupulescu specifically requested only that the BIA reopen its November 2001 decision on the basis of ineffective assistance of counsel. In light of this fact as well as the clear distinction between motions to reopen and motions to rescind, *see Song Jin Wu v. INS,* 436 F.3d 157, 161 n. 1 (2d Cir.2006), the BIA's construction of his motion as only a motion to reopen pursuant to 8 C.F.R. § 3.2(c)(1) (redesignated as 8 C.F.R. § 1003.2(c)(1), effective 2003) was not an abuse of discretion.[2] Moreover, the BIA properly recognized that Lupulescu's motion to reopen was in violation of the relevant time and numerical limitations. *See* 8 C.F.R. § 1003.2(c)(2) (noting that a party may file only one motion to reopen, which must be filed no later than 90 days after the date on which the final administrative decision was rendered).

Despite the untimeliness of his motion, Lupulescu failed to advance any arguments that he should be granted equitable tolling of the time and numerical restrictions on account of ineffective assistance of counsel. Nevertheless, the BIA decided to adjudicate this untimely motion to reopen "*sua sponte.*" 8 C.F.R. § 3.2(a) (redesig-

---

**2.** The BIA also did not abuse its discretion by declining to construe Lupulescu's motion as a motion to reconsider where he failed to allege any errors of fact or law in its November

2001 decision. 8 C.F.R. § 1003.2(b)(1); *Ke Zhen Zhao v. U.S. Dep't of Justice,* 265 F.3d 83, 90 (2d Cir.2001).

nated as 8 C.F.R. § 1003.2(a)). Although the BIA found that Lupulescu had submitted the required documents to support a claim of ineffective assistance of counsel as set forth in *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988), *petition for review denied by*, 857 F.2d 10 (1st Cir.1988), the BIA nonetheless denied Lupulescu's motion to reopen on the ground that he failed to demonstrate the requisite "due diligence" in pursuing his claims. *See Ali v. Gonzales*, 448 F.3d 515, 517 (2d Cir.2006) On appeal, Lupulescu claims that the BIA erred in applying this standard in considering his motion to reopen. We disagree.

Much of the confusion in this case appears to stem from Petitioner's mistaken belief that the motion he filed on October 17, 2002 was not subject to the time and numerical limitations set forth in 8 C.F.R. § 1003.2(c)(2), and the BIA's subsequent decision to consider Lupulescu's motion *sua sponte*. Apparently because he believed that the restrictions of 8 C.F.R. § 1003.2(c)(2) did not apply to his motion to reopen, Petitioner failed to file his motion to reopen within 90 days of the BIA's decision of November 15, 2001 and did not ask the BIA to equitably toll his untimely claims on the basis of ineffective assistance of counsel. Despite these failures, the BIA used its discretion to consider Lupulescu's motion to reopen *sua sponte*.

In agreeing to consider Lupulescu's motion to reopen, the BIA was neither bound to accept that motion nor to conclude that the claims therein had been equitably tolled. In fact, it seems clear that the animating purpose of the BIA's decision to grant *sua sponte* review was to consider whether Lupulescu's claims should have been equitably tolled even if Petitioner never requested this relief in the first place. Under 8 C.F.R. § 1003.2(a), the BIA is granted authority to "reopen or reconsider on its own motion any case in

which it has rendered a decision." This power surely also allows the BIA to adjudicate, *sua sponte*, a preliminary question of whether it is prudent to consider an otherwise time-barred motion to reopen that Petitioner has not sought to equitably toll. It is perfectly appropriate for the BIA to apply the due diligence standard in this context.

Claims of ineffective assistance of counsel may provide a sufficient basis for equitable tolling if the movant shows that his due process rights were violated by the conduct of counsel, and that the movant "exercised due diligence in pursuing the case during the period [he] seeks to toll." *Ali v. Gonzales*, 448 F.3d 515, 517 (2d Cir.2006) (citation omitted); *Cekic v. INS*, 435 F.3d 167, 170 (2d Cir.2006) (noting that "no matter how egregiously ineffective counsel's assistance may have been, an alien will not be entitled to equitable tolling unless he can affirmatively demonstrate that he exercised reasonable due diligence during the time period sought to be tolled.")

In analyzing whether the petitioner has met his due diligence requirement, courts must engage in a two-step inquiry. Courts must first examine whether and when the ineffective assistance "[was], or should have been, discovered by a reasonable person in the situation." *Iavorski v. INS*, 232 F.3d 124, 134 (2d Cir.2000). Then the petitioner bears the burden of proving that he exercised due diligence in the period between discovering the ineffectiveness of his representation and filing the motion to reopen. *Id.* at 135.

■ In this case, the BIA acted well within its discretion in concluding that Lupulescu had failed to meet his burden of establishing due diligence. As the BIA rightly observed, Lupulescu was unable to provide any convincing explanation for why, if he had timely completed and sub-

mitted the proper change of address form for the Immigration Court in the first place,[3] he waited until 2002 to claim that he was improperly ordered to be deported *in absentia* back in 1995. Lupulescu claims that he did not realize he had been ordered to be deported in absentia until 2001, when he first hired the attorney he now accuses of ineffective counsel, Zamir Iosepovici, to file an Alien Relative Petition. [**JA, at 46**] Lupulescu further claims that he subsequently provided Iosepovici with the change-of-address form and that Iosepovici negligently failed to file it with the Immigration Court. [*Id.* at 47] Iosepovici vigorously denies ever being made aware of such a document, [*Id.* at 9]; however, it is not necessary to resolve this dispute in order to conclude that Lupulescu failed to exercise due diligence in this matter. It is enough to recognize, as the BIA did, Lupulescu's inability to explain (1) why he did not file a complaint against the attorney (Ana Bunescu) who handled his original deportation proceeding back in 1995 given the fact that, according to Lupulescu's account, she would have been the first attorney to have failed to ensure that the Immigration Court received his change of address form;[4] and (2) why he waited six years before inquiring into whether the Immigration Court actually received his change-of-address form (after he was aware in 1995 that the government wanted to initiate deportation proceedings against him). The BIA was well within its discretion in rejecting Lupulescu's motion to reopen in light of these unexplained actions that clearly evince a lack of due diligence on the part of Lupulescu.

For the foregoing reasons, the petition for review is DENIED. As we have completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DISMISSED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34(d)(1).

---

3. Lupulescu did produce a completed change-of-address form, but no evidence was submitted to establish that the completed form was actually ever submitted to the Immigration Court.

4. Curiously, Bunescu was apparently not contacted at all to explain her role in Lupulescu's predicament.

