NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0300n.06

No. 21-3764

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 22, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| FABURAMA NJAI, | ) | |
| | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| v. | ) | |
| | ) | |
| MERRICK B. GARLAND, Attorney General, | ) | OPINION |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

Before: BATCHELDER, CLAY, and LARSEN, Circuit Judges.

**CLAY, Circuit Judge.** Petitioner Faburama Njai seeks review of a Board of Immigration Appeals ("BIA") order dismissing his appeal from the denial of his motion to reopen removal proceedings. *See* 8 U.S.C. §§ 1229a(c)(7), 1229a(b)(5)(C). We **DISMISS** in part and **DENY** in part the petition for review.

## I. BACKGROUND

### A. Factual Background

Petitioner Faburama Njai, a Gambian citizen, entered the United States in January 2002. He arrived in New York and was admitted pursuant to his nonimmigrant F-1 student visa. Njai was certified to attend two community colleges between 2002 and 2008. However, records from the United States Department of Homeland Security ("DHS") indicate that Njai did not attend either institution. His F-1 student status was thus cancelled on December 7, 2005.

Also in 2005, Njai applied for lawful status as a temporary resident. *See* 8 U.S.C. § 1255. That request was denied. Petitioner then married Beverly Njai, a United States citizen, in January 2007. Petitioner filed an application to register permanent residence or adjust status, Form I-485, and Ms. Beverly Njai filed a corresponding petition for an alien relative, Form I-130, in June 2008. However, Ms. Beverly Njai subsequently withdrew her petition, and Petitioner's application was denied in April 2009. His case "was referred to FDNS for marriage fraud investigation purposes." (R. of Deportable Alien, A.R. # 89–90.)

In July 2009, DHS began removal proceedings against Njai and issued a notice to appear ("NTA"). The NTA alleged that Njai "failed to maintain or comply with the conditions of the nonimmigrant status," specifically, the requirement that he attend an educational institution as long as he remained in the United States. (NTA, A.R. # 165.) The document ordered Njai to appear before an immigration judge in Cleveland, Ohio, on "a date to be set at a time to be set to show why [he] should not be removed from the United States." (*Id.*) DHS sent the NTA by mail on July 10, 2009.

Several weeks later, on August 6, 2009, the IJ mailed Njai a notice of hearing ("NOH"). The NOH stated the date, time, and location for Njai's initial master calendar hearing.[1] Njai appeared at the November 2009 master calendar hearing. He admitted the factual allegations and conceded removability.

---

[1] The NOH also included information regarding Njai's rights and the relevant procedures. It noted that Njai could be represented by counsel and also articulated the consequences of failing to appear.

Subsequently, Njai divorced Ms. Beverly Njai, and he married Ms. Terri Njai on November 17, 2009. Thereafter, the IJ held three additional master calendar hearings on December 9, 2009, February 3, 2010, and March 31, 2010. Njai received a NOH for each of these hearings,[2] and he appeared at each of them.

At the March 31, 2010, hearing, Njai requested a continuance in anticipation of his second wife's pending petition for an alien relative. The IJ granted the continuance and provided Njai with a fifth NOH, which was served personally to Njai's counsel. The NOH stated the date, time, and location of the continued hearing: November 3, 2010, at 2:30 P.M., at the immigration court in Cleveland.

But before the continued hearing could take place on November 3, 2010, Ms. Terri Njai submitted a letter to the IJ stating that her marriage to Petitioner was fraudulent. In her letter, Ms. Terri Njai, "respectfully ask[ed] [the IJ] to uphold the Removal process and deport Faburama Njai from the United States of America and allow him no relief . . . ." (Letter to IJ, A.R. 151 (received August 26, 2010).) Njai then failed to appear at his November 3, 2010, hearing. Consequently, the IJ ordered Njai removed *in absentia*. In its order, the IJ noted that removability was established as charged by DHS, and Njai's absence constituted abandonment and failure to prosecute.

## B. Procedural History

Njai filed the motion to reopen removal proceedings at issue in this case on September 19, 2018. He asked the immigration court to reopen his proceedings in light of the Supreme Court's

---

[2] Njai's immigration attorney was personally served with each of these written notices. They each contained the date, time, and location of his following master calendar hearing. *See* 8 U.S.C. § 1229(a)(1).

opinion in *Pereira v. Sessions*, 138 S. Ct. 2105, 2110 (2018), which held that an incomplete "notice to appear" does not trigger the stop-time rule for purposes of cancellation of removal.[3] *See also* 8 U.S.C. § 1229(b)(1). Njai claimed that his proceedings should be reopened because, due to the deficiencies of his NTA, the immigration court never had jurisdiction over his case. He also asked the IJ to equitably toll the filing deadline applicable to his motion because he was allegedly unable to bring it prior to the Supreme Court's opinion in *Pereira*. Njai further argued that he now met the eligibility requirements for cancellation of removal, *see* 8 U.S.C. § 1229b(b)(1), and the IJ could use its discretionary authority to reopen his proceedings.

The IJ denied Njai's motion in November 2018. The IJ emphasized that Njai "appeared at his initial hearing on November 5, 2009, and at three subsequent hearings." (IJ Order, A.R. # 56.) The court also distinguished Njai's case from the one considered by the Supreme Court in *Pereira*, insofar as "the respondent in *Pereira* never appeared at his proceedings, received an *in absentia* order, and then petitioned to reopen his case on the basis that he never received notice of his removal hearing." (*Id.*) It further noted that, "[i]n this case, the Respondent appeared at multiple hearings and had the opportunity to apply for relief," and thus determined that "[t]hese facts present a critical difference" because Njai knew of his case and appeared at his hearings. (*Id.*) The IJ concluded by stating that Njai's case did not warrant relief because he "failed to demonstrate that there is a fundamental change in the law that now makes him eligible for Cancellation of Removal" and because Njai failed to demonstrate "the existence of an exceptional circumstance that justifies the Court's discretionary authority." (*Id.*)

---

[3] Specifically, the Court concluded that a "putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a)' and so does not trigger the stop-time rule." *Pereira*, 138 S. Ct. at 2113–14.

Njai timely appealed from the IJ's decision. He reiterated his contentions that *Pereira* rendered him eligible for cancellation of removal and, in the alternative, the BIA should reopen his removal order *sua sponte*. Njai emphasized his arguments about the deficiency of his NTA under *Pereira v. Sessions*.

The BIA rejected Njai's arguments. It concluded that the IJ had jurisdiction over Njai's case, the untimely motion was not subject to equitable tolling, and Njai was not otherwise eligible for cancellation of removal. Njai timely petitioned this Court for review.

## II. DISCUSSION

### A. Jurisdiction

The Court may review a final order of removal where a petition raises constitutional claims or questions of law. *See* 8 U.S.C. § 1252(a)(1), (a)(2)(D); *see also Patel v. Garland*, 142 S. Ct. 1614, 1618 (2022). In this case, Njai raises such claims. Indeed, he asks the Court to review the IJ's conclusions regarding jurisdiction, the legal standards underlying motions to reopen, and the application of the stop-time rule in cancellation of removal proceedings. However, the Court lacks jurisdiction to review facts found in relation to Njai's cancellation of removal arguments under 8 U.S.C. § 1229b. *Patel*, 142 S. Ct. at 1618. The Court also lacks jurisdiction to review claims that Njai did not properly and/or sufficiently exhaust before the BIA. *Cuevas-Nuno v. Barr*, 969 F.3d 331, 332–33 (6th Cir. 2020).

### B. Standard of Review

"A motion to reopen is a form of procedural relief that asks the Board to change its decision in light of newly discovered evidence or a change in circumstances since the hearing." *Dada v. Mukasey*, 554 U.S. 1, 12 (2008) (internal quotation marks omitted). The Court reviews a BIA's

final order denying such a motion for an abuse of discretion. *Santos-Santos v. Barr*, 917 F.3d 486, 489 (6th Cir. 2019). The Court may conclude that the BIA abused its discretion when it finds that the BIA's determination was made "without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as an invidious discrimination against a particular race or group." *Id.* (citing *Camaj v. Holder*, 625 F.3d 988, 991 (6th Cir. 2010) (quoting *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006))). The Court reviews legal conclusions *de novo*, "but afford[s] 'substantial deference' to [the BIA's] 'interpretations of the INA and accompanying regulations.'" *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 312 (6th Cir. 2018) (quoting *Shaya v. Holder*, 586 F.3d 401, 405 (6th Cir. 2009)); *see also Ramaj v. Gonzales*, 466 F.3d 520, 527 (6th Cir. 2006).

## C. Analysis

Njai seeks review of the BIA's decision dismissing his appeal from the denial of his motion to reopen proceedings. A person subject to removal may file a motion to reopen proceedings within ninety days of the date of the final administrative order of removal. *See* 8 U.S.C. § 1229a(c)(7). There are "at least three independent grounds" on which the BIA may deny a motion to reopen: when (1) the movant has not established a prima facie case for the underlying substantive relief sought; (2) the movant has not introduced new or previously unavailable evidence; or (3) the relief sought is discretionary and the movant is not entitled to a discretionary grant of relief. *I.N.S. v. Abadu*, 485 U.S. 94, 104–105 (1988).

In this case, the BIA found that Njai neither met the filing deadline nor qualified for relief. For the following reasons, the BIA did not abuse its discretion.

### i. Immigration Court's Jurisdiction & Rescission

As a preliminary matter, the Court addresses Njai's jurisdictional argument. Njai contends that "the Immigration Court never had jurisdiction over [his] removal proceedings" because his NTA was deficient. (Pet'r's Br. 20–21.) Accordingly, Njai argues that the IJ and BIA erroneously failed to terminate his proceedings.

However, Njai agrees that this Court "rejected this jurisdictional argument" in two recent cases, *Ramos Rafael v. Garland*, 15 F.4th 797, 800–801 (6th Cir. 2021) and *Santos-Santos*, 917 F.3d at 490.[4] (*Id.* at 21.) In *Ramos Rafael*, the Court held that the jurisdictional requirements of 8 U.S.C. § 1229(a) are satisfied when a deficient NTA is supplemented by a "subsequent notice of the time and place" of the hearing. *Ramos Rafael*, 15 F.4th at 800. The Court went on to emphasize that "*Pereira* and *Niz-Chavez* concern only the stop-time rule," which is not implicated in Njai's jurisdictional argument. *Id.* at 800–801. In this case, like the petitioner in *Ramos Rafael*, Njai's NTA was supplemented with "a subsequent Notice of Hearing, which provided the required time and date information that was missing from the Notice to Appear." *Id.* at 801. Accordingly, the IJ had jurisdiction over Njai's removal proceedings.

In tandem with his jurisdictional argument, Njai now contends that his removal order should be rescinded under 8 U.S.C. § 1229a(b)(5)(C)(ii) due to the government's deficient NTA. *See* 8 U.S.C. § 1229(a); *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1480–81 (2021). As noted above,

---

[4] Njai candidly "recognizes that the panel is bound by *Rafael*." (Pet'r's Br. 21); *see also Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.") (citing *Timmreck v. United States*, 577 F.2d 372, 376 n.15 (6th Cir. 1978)); *see also United States v. Jarvis*, 999 F.3d 442, 445–46 (6th Cir. 2021).

the government claims that Njai "never raised" this argument before the BIA, and the argument is thus unexhausted. (Resp't's Br. 13; *see also* Njai BIA Br., A.R. # 16–17; Mot. to Reopen Removal Proc., A.R. # 65; *see also* BIA Dec., A.R. # 3–4.)

"[B]efore raising an immigration issue in federal court, a petitioner must normally present all reviewable issues to the BIA." *Khalili v. Holder*, 557 F.3d 429, 432 (6th Cir. 2009) (citing *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006)). "If the petitioner fails to exhaust an issue before the BIA, that issue is normally deemed to be waived." *Id.* at 433 (citing *Hasan v. Ashcroft*, 397 F.3d 417, 420 (6th Cir. 2005); *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004)). However, if the BIA "raised and ruled on the merits of [a petitioner's] claim," there is appellate jurisdiction to review those issues. *Id.* at 433–35.

In this case, Njai argues that his rescission argument was "[i]mplicit in [his] motion to reopen for cancellation of removal." (Reply Br. 3.) He also contends that "there is no prejudice to the agency" here because the BIA has already set forth its counterargument in a separate published decision, *Matter of Laparra*, 28 I. & N. Dec. 425 (BIA 2022), so "[e]xhaustion was therefore futile and unnecessary." (Reply Br. 4.) Finally, Njai argues that "[t]o the extent that Mr. Njai has reframed his arguments to the Court, these arguments are based on circuit court and agency case law that arose after the BIA's decision." (*Id.* at 3.)

Njai's purported explanations are unavailing. Before the IJ and BIA, Njai never argued that his removal order should be rescinded under 8 U.S.C. § 1229a(b)(5)(C)(ii) due to the deficiency of his NTA, despite the fact that Njai had the opportunity to do so ahead of the BIA's decision. *See Pereira*, 138 S. Ct. at 2110 (holding in 2018 that a notice "that does not inform a noncitizen when and where to appear . . . is not a 'notice to appear under section 1229(a)'").

Nor does the BIA's separate treatment of the issues in *Matter of Laparra*, or other cases, alleviate Njai's failure to exhaust the claim. In support of his contention that exhaustion was "futile and unnecessary" because the agency "has already set forth its reasoning in a published decision," Njai cites this Court's opinion in *Khalili*, 557 F.3d at 432–34, and the Tenth Circuit's opinion in *Martinez-Perez v. Barr*, 947 F.3d 1273, 1279–84 (10th Cir. 2020). (*Id.*) However, both of those cases hold that the Court of Appeals has jurisdiction to review claims that are not otherwise exhausted where the BIA already adjudicated the precise issue in the same person's case, not where the BIA merely addressed an analogous claim in an entirely separate case. *Khalili*, 557 F.3d at 433 (holding that the Court could review Khalili's unexhausted argument where "the BIA sua sponte raised and ruled on the merits of Khalili's claim"); *Martinez-Perez*, 947 F.3d at 1282–83 (holding that a petitioner can bring an unexhausted argument where the BIA clearly identifies a claim, issue or argument not presented by the petitioner, exercises its discretion to entertain the issue, and explicitly decides the issue in a "full explanatory opinion or substantive discussion"). Rather than supporting Njai's contention that exhaustion was "futile and unnecessary," both opinions bolster the government's argument that this Court is without jurisdiction to review Njai's rescission argument because he did not present it to the BIA, and the BIA did not otherwise address it. (*Compare* Resp't's Br. 18–19 *with* Reply Br. 4); *Khalili*, 557 F.3d at 432–34; *Martinez-Perez*, 947 F.3d at 1282–83.

Additionally, that the Fifth and Ninth Circuits ruled in favor of two petitioners who brought similar substantive arguments subsequent to the BIA's decision in Njai's case does not change the Court's exhaustion analysis. *See generally Singh v. Garland*, 24 F.4th 1315, 1319–21 (9th Cir. 2022); *Rodriguez v. Garland*, 15 F.4th 351, 352–56 (5th Cir. 2021). As stated above, Njai had the

9

opportunity to raise the rescission argument well before the BIA entered its decision. (*See* Mot. to Reopen Removal Proc., A.R. # 64–76; Notice of Appeal, A.R. # 45–47; *see also* Njai BIA Br., A.R. # 13–25.) But he did not do so, and he instead brought it to this Court in the first instance. Consequently, the Court lacks jurisdiction to review the claim, and it is therefore dismissed. *See Khalili*, 557 F.3d at 433–35.

### ii. Motion to Reopen Due to Change in Law

Njai filed his motion to reopen removal proceedings more than seven years after the IJ entered his *in absentia* removal order. Nevertheless, Njai claims that the IJ and the BIA erred when they failed to equitably toll the ninety-day deadline under 8 U.S.C. § 1229a(c)(7)(C)(i) and grant his motion. Njai's arguments are incorrect for several reasons.

Where a noncitizen moves to reopen his removal proceedings due to a subsequent change in law, the ninety-day deadline set out by 8 U.S.C. § 1229a(c)(7)(C)(i) applies to the motion. *See In re M-S-*, 22 I. & N. Dec. 349, 353–55 (BIA 1998); *see also Wu v. I.N.S.*, 436 F.3d 157, 161–63 (2d Cir. 2006); *Glavatovic v. Att'y Gen. of U.S.*, 217 F. App'x 172, 174 (3d Cir. 2007) (concluding that "an alien who moved to reopen deportation proceedings held *in absentia* in order to apply for relief that was not available at the time of the hearing" is subject to the deadline under 8 U.S.C. § 1229a(c)(7)(C)(i) rather than 8 U.S.C. § 1229a(b)(5)(C)). The parties agree that Njai missed the deadline. Accordingly, this argument only succeeds if the BIA erroneously determined that equitable tolling was not appropriate in this case. *See Barry v. Mukasey*, 524 F.3d 721, 724 (6th Cir. 2008).

"The Sixth Circuit has applied the doctrine of equitable tolling to otherwise time-barred motions to reopen." *Tapia-Martinez v. Gonzales*, 482 F.3d 417, 422 (6th Cir. 2007) (citing

*Harchenko v. I.N.S.*, 379 F.3d 405, 409–10 (6th Cir. 2004)) (emphasis omitted); *Ljucovic v. Gonzales*, 144 F. App'x 500, 503 (6th Cir. 2005); *Hermiz v. I.N.S.*, 86 F. App'x 44, 45 (6th Cir. 2005); *Scorteanu v. I.N.S.*, 339 F.3d 407, 413 (6th Cir. 2003)); *see also Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946). To evaluate whether the doctrine applies to time-barred claims, the Court considers five factors, including: "(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Barry*, 524 F.3d at 724.

The *Barry* factors weigh against Njai's equitable tolling argument. *See id.* As to the first two factors, Njai does not dispute that the filing requirements existed at the time of his removal proceedings, wherein he was represented by counsel. Additionally, the record shows that rather than diligently pursuing his rights, Njai failed to attend his master calendar hearing and "moved to Washington State and lost track of things." (*See* Njai Statement, A.R. # 79.) This occurred notwithstanding the fact that Njai's immigration attorney was personally served with various notices that included information regarding the consequences of failing to appear. (*See* NOH II, A.R. # 160–161; NOH III, A.R. # 156–57; NOH IV, A.R. 154–55; NOH V, A.R. # 152–53.) And despite his receipt of a single written notice stating the date, time, and location of his fifth hearing, Njai missed it. (*See* NOH V, A.R. # 152–53; Njai Statement, A.R. # 79.) He then waited to file his motion to reopen proceedings for more than seven years, following his third marriage upon which his request for relief relies. *See Zhang v. Mukasey*, 543 F.3d 851, 859 (6th Cir. 2008) (concluding that extending the deadline in a motion to reopen removal proceedings is disfavored

11

where it "permits an alien to manufacture a more perfect asylum application while living illegally in the United States") (citing *Wang v. BIA*, 437 F.3d 270, 274 (2d Cir. 2006) ("[I]t would be ironic . . . if petitioners like Wang, who have remained in the United States illegally following an order of deportation, were permitted to have a second and third bite at the apple simply because they managed to marry and have children while evading authorities.")).

Njai nevertheless maintains that he diligently pursued his rights following the Supreme Court's 2018 opinion in *Pereira v. Sessions*, which, in his view, opened a new path for relief that was previously unavailable due to this Court's prior adverse precedent. (Pet'r's Br. 19); 138 S. Ct. at 2110. He emphasizes that he filed his motion to reopen "less than 90 days" after that decision. (Pet'r's Br. 7.) But as the Seventh Circuit recently noted, "notwithstanding adverse circuit precedent in 2010 as to the validity of the notice to appear, [Petitioner] nonetheless could have challenged the notice based on the language of the statute." *Mejia-Padilla v. Garland*, 2 F.4th 1026, 1032 (7th Cir. 2021). This conclusion follows the Supreme Court's repeated statement that adverse precedent in a lower court does not excuse a petitioner's failure to timely raise potentially viable claims. *See Bousley v. United States*, 523 U.S. 614, 622–23 (1998); *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982).

In this case, Njai failed to show that his delay in filing the motion to reopen was due to "an exceptional circumstance beyond his control." *Barry*, 524 F.3d at 724 (citing *Tapia-Martinez*, 482 F.3d at 423 (citation omitted)). Consequently, the BIA did not abuse its discretion when it declined Njai's equitable tolling argument and dismissed his appeal. *See Abadu*, 485 U.S. at 104–105.

## III.  CONCLUSION

For the reasons stated above, we **DENY** in part and **DISMISS** in part Faburama Njai's petition for review.  The Court **DENIES** Njai's jurisdictional and discretionary relief arguments and **DISMISSES** Njai's rescission claim due to his failure to exhaust the issue.